UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| JIANGSU SENMAO BAMBOO AND WOOD INDUSTRY CO., LTD.,<br><br>    Plaintiff,<br><br>LUMBER LIQUIDATORS SERVICES, LLC,<br><br>    Plaintiff-Intervenor,<br><br>    v.<br><br>UNITED STATES,<br>    Defendant,<br>    and<br><br>AMERICAN MANUFACTURERS OF MULTILATYERED WOOD FLOORING,<br><br>Defendant-Intervenor. | Before: Jennifer Choe-Groves, Judge<br><br>Court No. 22-00190 |

## PLAINTIFF-INTERVENOR'S RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD

This memorandum of points of law is submitted in support of the Motion for Judgment on the agency record submitted by Plaintiff-Intervenor, Lumber Liquidators Services, LLC, ("Lumber Liquidators"), a domestic importer of subject merchandise.

Plaintiff-Intervenor challenges certain aspects of the final results of the ninth administrative review of the antidumping duty order on Multilayered Wood Flooring ("MLWF") from the People's Republic of China conducted by the United States Department of Commerce ("Commerce"). *Multilayered Wood Flooring From the People's Republic of China: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments:*

*2019-2020*, 87 Fed. Reg. 39464 (July 1, 2022) ("*Final Results*"), and accompanying Issues and Decision Memorandum for the Final Results of Antidumping Duty Administrative Review: Multilayered Wood Flooring from the People's Republic of China; 2019-2020, dated June 24, 2022 ("Final IDM").

Plaintiff-Intervenor respectfully moves this Court to remand the case back to Commerce with instructions to reconsider aspects of its determination in accordance with this Court's decision.

Respectfully submitted,

CLARK HILL PLC

_/s/ Mark Ludwikowski_____
Mark Ludwikowski
Kelsey Christensen

1001 Pennsylvania Ave., N.W.
Suite 1300 South
Washington, DC 20004
Tel. (202) 640-6680

*Counsel for Plaintiff-Intervenor*

Dated: November 8, 2022

## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| **JIANGSU SENMAO BAMBOO AND WOOD INDUSTRY CO., LTD.,**<br><br>   **Plaintiff,**<br><br>**LUMBER LIQUIDATORS SERVICES, LLC,**<br><br>     **Plaintiff-Intervenor,**<br><br>  v.<br><br>**UNITED STATES,**<br>          **Defendant,**<br>   **and**<br><br>**AMERICAN MANUFACTURERS OF MULTILATYERED WOOD FLOORING,**<br><br>**Defendant-Intervenor.** | **Before: Jennifer Choe-Groves, Judge**<br><br>**Court No. 22-00190** |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF-INTERVENOR'S RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD**

Mark Ludwikowski
Kelsey Christensen
**Clark Hill PLC**

1001 Pennsylvania Ave., N.W.
Suite 1300 South
Washington, DC 20004
Tel. (202) 640-6680

*Counsel for Plaintiff-Intervenor*

Dated: November 8, 2022

**Table of Contents**

INTRODUCTION ............................................................................................................. 8

ADMINISTRATIVE DETERMINATION UNDER REVIEW .................................... 9

STATEMENT OF ISSUES PRESENTED FOR REVIEW ....................................... 10

STATEMENT OF FACTS ............................................................................................ 10

SUMMARY OF ARGUMENT ................................................................................... 13

STANDARD OF REVIEW AND JURISDICTION ................................................. 15

ARGUMENT .................................................................................................................. 17

   I.   COMMERCE ERRED BY NOT VALUING ALL FACTORS OF PRODUCTION
   FROM A SINGLE SURROGATE COUNTRY ....................................................... 17

   II.   SURROGATE VALUES BASED ON MALAYSIAN LOG DATA ARE
   ABBERATIONAL AND ARE NOT SUPPORTED BY SUBSTANTIAL EVIDENCE ........ 20

CONCLUSION .............................................................................................................. 26

## Table of Authorities

**Cases**

*Air Products and Chemicals, Inc. v. United States*, 14 F. Supp. 2d 737 (Ct. Int'l Trade 1998)... 17

*Association of Am. School Paper Suppliers v. United States*, 716 F. Supp. 2d, 1329 (Ct. Int'l Trade 2010) ................................................................................................................. 25

*Clearon Corporation and Occidental Chemical Corp. v. United States*, 37 C.I.T. 220 (Ct. Int'l Trade 2013) ......................................................................................................... 19

*Clearon Corporation v. United States*, 37 C.I.T. 220, 228 (Ct. Int'l Trade 2013) ...................... 19

*Consolidated Edison Corp. v. NLRB*, 305 U.S. 197 (1938) ........................................................ 15

*CS Wind Vietnam Co. v. United States*, 38 C.I.T. 376 (Ct. Int'l Trade 2014) ............................. 21

*Gerald Metals, Inc. v. United States*, 132 F.3d 716 (Fed. Cir. 1997) .......................................... 16

*Jiangsu Senmao Bamboo and Wood Industry Co., Ltd. v. United States*, Ct. No. 20-00190, ECF No. 15 (Ct. Int'l Trade 2022) .................................................................................... 16

*Lasko Metal Prods. Inc. v. United States*, 43 F. 3d 1442 (Fed. Cir. 1994)................................... 17

*Mittal Steel Galati S.A. v. United States*, *502 F. Supp. 2d 1295* (Ct. Int'l Trade 2014)............... 21

*Nation Ford Chem. Co. v. United States*, *166 F.3d 1373* (Fed. Cir. 1999) ................................. 21

*Peer Bearing Company-Changshan v. United States*, *752 F. Supp. 2d 1353* (Ct. Int'l Trade 2011) ................................................................................................................................. 24

*Shakeproof Assembly Components, Div. of Ill. Toolworks Inc. v. United States*, 268 F. 3d 1376 (Fed. Cir. 2001) ................................................................................................ 17

*Shanghai Foreign Trade Enters. Ltd. v. United States*, 318 F. Supp 1339 (Ct. Int'l Trade 2004) 24

*Xinjiamei Furniture (Zhangzhou) Co., v. United States*, 37 C.I.T. 308 (Ct. Int'l Trade 2013) .... 25

*Zhejiang DunAn Hetian Metal Co. v. United States*, 652 F.3d 1333 (Fed. Cir. 2011) ................ 23

*Zhejiang Native Produce & Animal By-Products Import & Export Corp. v. United States*, 27 CIT

    1827 Slip Op. 03-151 (Ct. Int'l Trade 2003) .......................................................... 24

## Statutes

19 C.F.R. §351.408(c)(2) ................................................................................ 8, 16

19 U.S.C. § 1516a ........................................................................................ 15

19 U.S.C. § 1516a(b)(1)(B)(i) .......................................................................... 14, 15

19 U.S.C. § 1677b(c)(1) ................................................................................ 16, 23

28 U.S.C. § 1581(c) ..................................................................................... 15

## Regulations

Antidumping Duties; Countervailing Duties, 61 Fed. Reg. 7,308, 7,345 (Feb. 27, 1996…….9,

    14, 17, 19

## Administrative Decisions

*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the*

    *People's Republic of China: Final Results of Antidumping Duty Administrative Review and*

    *Final Determination of No Shipments; 2016- 2017*, 84 Fed. Reg. 36,886 (July 30, 2019) ...... 18

*Multilayered Wood Flooring From the People's Republic of China: Final Results of*

    *Antidumping Duty Administrative Review and Final Determination of No Shipments: 2019-*

    *2020*, 87 Fed. Reg. 39464 (July 1, 2022) ...................................................... 9, 12, 13

*Multilayered Wood Flooring From the People's Republic of China: Final Results of*

    *Antidumping Duty Administrative Review and Final Results of New Shipper Review; 2012-*

    *2013*, 80 Fed. Reg. 41476 (July 15, 2015) ...................................................... 13, 22

*Multilayered Wood Flooring from the People's Republic of China: Initiation of Antidumping Duty Investigation*, 75 Fed. Reg. 70714 (Nov. 18, 2010) ....................................................... 10

*Multilayered Wood Flooring From the People's Republic of China: Amended Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order*, 76 Fed. Reg. 76690 (Dec. 8, 2011) ......................................................................................................... 10

*Multilayered Wood Flooring from China*, 75 Fed. Reg. 66126 (Oct. 27, 2010) ......................... 10

*Multilayered Wood Flooring From the People's Republic of China: Final Results of Antidumping Duty Administrative Review, Final Successor-in-Interest Determination, and Final Determination of No Shipments; 2018-2019*, 86 Fed. Reg. 59987 (October 29, 2021) ................................................................................................................................. …20, 22

*Multilayered Wood Flooring From the People's Republic of China: Final Results of Antidumping Duty Administrative Review, Final Determination of No Shipments, and Final Partial Rescission of Antidumping Duty Administrative Review; 2014-2015*, 82 Fed. Reg. 25766 (June 5, 2017)......................................................................................................... 12, 22

*Multilayered Wood Flooring From the People's Republic of China: Final Results of Antidumping Duty Administrative Review, Final Determination of No Shipments; 2016-2017*, 84 Fed. Reg. 38002 (August 5, 2019) ..................................................................................... 22

*Multilayered Wood Flooring from the People's Republic of China: Preliminary Results of the Antidumping Duty Administrative Review, Preliminary Determination of No Shipments, and Recission of Review, in Part; 2019-2020*, 86 Fed. Reg. 73252 (Dec. 27, 2021) ..................... 11

*Xanthan Gum from the People's Republic of China: Final Determination of Sales at Less Than Fair Value*, 78 Fed. Reg. 33,350 (June 4, 2013)..................................................................... 19

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| JIANGSU SENMAO BAMBOO AND WOOD INDUSTRY CO., LTD., <br><br>       Plaintiff, <br><br> LUMBER LIQUIDATORS SERVICES, LLC, <br><br>       Plaintiff-Intervenor, <br><br>   v. <br><br> UNITED STATES, <br><br>             Defendant, <br><br>   and <br><br> AMERICAN MANUFACTURERS OF MULTILATYERED WOOD FLOORING, <br><br><br> Defendant-Intervenor. | Before: Jennifer Choe-Groves, Judge <br><br> Court No. 22-00190 |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF-INTERVENOR'S RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD

### INTRODUCTION

Plaintiff-Intervenor, Lumber Liquidators Services, LLC, ("Lumber Liquidators"), by and through their attorneys, hereby submit this memorandum in support of their motion for judgment on the agency record challenging the U.S. Department of Commerce's ("Commerce") final results of the administrative review of the antidumping duty ("AD") order covering multilayered wood flooring ("MLWF") from the People's Republic of China. Commerce improperly used surrogate value ("SV") data from Malaysia, rather than data from the primary surrogate country Brazil, to value log inputs for the mandatory respondent Jiangsu Senmao Bamboo and Wood

Industry Co., Ltd., ("Senmao"). Commerce's decision to discard certain SV data from the primary surrogate country and to rely on aberrational Malaysian surrogate values for logs was not supported by substantial evidence or otherwise in accordance with law. This decision was contrary to Commerce's practice to value all factors of production in a single surrogate country, and Commerce failed to demonstrate that log data from the primary surrogate country was either unavailable or unreliable. *See, e.g.*, 19 C.F.R. §351.408(c)(2) and Antidumping Duties; Countervailing Duties, 61 Fed. Reg. 7,308, 7,345 (Feb. 27, 1996).

Plaintiff-Intervenor contests Commerce's AD rate of 39.27 percent assigned to Senmao and the non-selected companies under review receiving a separate rate as well as the underlying determinations leading to this calculation.

## ADMINISTRATIVE DETERMINATION UNDER REVIEW

This action seeks judicial review of certain aspects of the final results of the administrative review of the antidumping duty order on MLWF from the People's Republic of China conducted by Commerce. *Multilayered Wood Flooring From the People's Republic of China: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments: 2019-2020*, 87 Fed. Reg. 39464 (July 1, 2022) ("*Final Results*"), and accompanying Issues and Decision Memorandum for the Final Results of Antidumping Duty Administrative Review: Multilayered Wood Flooring from the People's Republic of China; 2019-2020, dated June 24, 2022 ("Final IDM"). The review in question covers entries of MLWF for the period of December 1, 2019 through November 30, 2020.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.  Whether Commerce erred by not valuing all factors of production from a single surrogate country.

2.  Whether Commerce's surrogate values based on Malaysian log data are aberrational or otherwise not supported by substantial evidence.

## STATEMENT OF FACTS

Commerce initiated the antidumping duty investigation of MLWF from the People's Republic of China on November 18, 2010, following filing of the petition on October 21, 2010.[1] The International Trade Commission ("Commission") simultaneously conducted its investigation.[2]

On October 18, 2011, Commerce issued a final determination of sales at less than fair value, amended December 8, 2011. Commerce also issued an antidumping duty order on MLWF from the People's Republic of China on December 8, 2011, following an affirmative injury determination by the Commission.[3] The antidumping duty order remains in effect.

In December 2020, certain interested parties requested that Commerce conduct an annual administrative review on MLWF from the People's Republic of China, and on March 14, 2019,

---

[1] *Multilayered Wood Flooring from the People's Republic of China: Initiation of Antidumping Duty Investigation*, 75 Fed. Reg. 70714 (Nov. 18, 2010).

[2] *See Multilayered Wood Flooring from China*, 75 Fed. Reg. 66126 (Oct. 27, 2010).

[3] *Multilayered Wood Flooring From the People's Republic of China: Amended Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order*, 76 Fed. Reg. 76690 (Dec. 8, 2011).

Commerce initiated the ninth administrative review covering the period of December 1, 2019 through November 30, 2020 ("POR").[4]

On July 1, 2021, Commerce requested economic development, surrogate country, and SV comments and information from all interested parties.[5] Following Commerce's request, Senmao and American Manufacturers of Multilayered Wood Flooring ("AMMWF") each filed surrogate country comments and SV comments and data. Lumber Liquidators filed a letter in support of SVs from Brazil.[6] Subsequently, Senmao and AMMWF each filed rebuttal SV comments.

On December 17, 2021, Commerce issued its SV memorandum, SV data, and its preliminary results and accompanying issues and decisions memorandum.[7] In its SV memorandum, Commerce determined that the Brazilian SVs on the record for the material inputs appear complete and viable.[8] Nonetheless, Commerce discarded log input SV data from Brazil, which it chose as the primary surrogate country, and replaced this subset of data with Malaysian

---

[4] *See Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 86 Fed. Reg. 8166 (Feb. 4, 2021).

[5] Letter to All Interested Parties: Multilayered Wood Flooring – 9th Administrative Review; Request for Economic, Surrogate Country and Surrogate Value Comments and Information (July 1, 2021).

[6] Letter on Behalf of Lumber Liquidators, in Support of Surrogate Values from Brazil (July 29, 2021).

[7] Letter from Rebecca Trainor, Program Manager, AC/CVD Operations, Office VIII, to The File: Antidumping Duty Administrative Reviews of Multilayered Wood Flooring from the People's Republic of China; 2019-2020: Surrogate Values for the Preliminary Results (Dec. 20, 2021) ("Preliminary SV Memorandum"); *Multilayered Wood Flooring from the People's Republic of China: Preliminary Results of the Antidumping Duty Administrative Review, Preliminary Determination of No Shipments, and Recission of Review, in Part; 2019-2020*, 86 Fed. Reg. 73252 (Dec. 27, 2021), and accompanying Issues and Decisions Memorandum (Dec. 17, 2021) ("Preliminary IDM").

[8] Preliminary SV Memorandum, at 2.

SV data specific to oak logs.[9]  At this stage of the review, Commerce justified its decision to discard certain Brazilian SV data and replace it with Malaysian SV data to avoid double counting.[10]  Commerce also denied Senmao a by-product offset in the preliminary results, contrary to its decisions in prior administrative reviews, while there were no new facts to justify treating Senmao differently in the instant review.[11]

On February 7, 2022, Senmao and AMMWF each filed a case brief. Lumber Liquidators filed a letter in support of the arguments set forth by Senmao.[12]  Senmao, Lumber Liquidators, and AMMWF each filed rebuttal briefs on February 17, 2022. A public hearing was held via video conference on March 9, 2022.[13]

On June 27, 2022, Commerce issued its final results of the antidumping administrative review, and the accompanying issues and decision memorandum.[14]  In the Final IDM, Commerce continued to rely on Brazil as the primary surrogate country but nonetheless

---

[9] *Id.*

[10] *Id.*

[11] *See, e.g.*, *Multilayered Wood Flooring from the People's Republic of China: Final Results of the Antidumping Duty Administrative Review, Final Determination of No Shipments, and Final Partial Recission of Antidumping Duty Administrative Review; 2014-2015*, 82 Fed. Reg. 25766 (June 5, 2017), and accompanying Issues and Decisions Memorandum at Comment 13.

[12] Letter on Behalf of Lumber Liquidators, in Lieu of Brief (Feb. 7, 2022).

[13] Letter from Rebecca Trainor, Program Manager, AD/CVD Operations, Office VIII, to All Interested Parties: Multilayered Wood Flooring from the People's Republic of China – 9th Administrative Review: Scheduling of Public Hearing (Mar. 2, 2022).

[14] *Multilayered Wood Flooring from the People's Republic of China: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2019-2020*, 87 Fed. Reg. 39464 (July 1, 2022), and accompanying Issues and Decision Memorandum (June 27, 2022) ("Final IDM").

discarded Brazilian SV data regarding log inputs.[15]  Instead, Commerce chose to use Malaysian

SV data for log values, asserting that such data constituted the best available information on the

record.[16] Commerce made additional changes to the Brazilian SV data in its final determinations,

revising the SV for plywood and its calculation of surrogate financial ratios.[17]  These revisions

were contrary to Commerce's practice for testing the reliability of the data and improperly

expose the data to manipulation through the removal of specific line items.[18] As a result of these

changes, Commerce calculated an antidumping duty margin for Senmao of 39.27 percent.[19]

## SUMMARY OF ARGUMENT

Commerce's decision to select Brazil as the primary surrogate country, while rejecting

the Brazilian log data (and relying on log inputs from Malaysia instead), adjusting Brazilian

plywood data, and revising the Brazilian financial ratios was not supported by substantial

evidence or otherwise in accordance with law.

First, Commerce erred by not valuing all factors of production from a single surrogate

country.  In this case, Commerce has a well-established methodology to value factors of

production ("FOPs") from a single surrogate country, and only to resort to a secondary surrogate

country if data from the primary surrogate country are unavailable or unreliable.  In

---

[15] Final IDM at 22.

[16] Final IDM at 22.

[17] Final IDM at 6, 9-10.

[18] *See, e.g.*, *Multilayered Wood Flooring from the People's Republic of China: Final Results of Antidumping Duty Administrative Review and Final Results of New Shipper Review; 2012-2013*, 80 Fed. Reg. 41476 (July 15, 2015), and accompanying Issues and Decision Memorandum.

[19] *Multilayered Wood Flooring from the People's Republic of China: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2019-2020*, 87 Fed. Reg. 39464 (July 1, 2022).

promulgating Commerce' regulations, it was explained that the preference for using a single country is meant to prevent parties from margin shopping.[20]

The record in this case does not support a conclusion that the Brazilian log data is either unavailable or unreliable. Moreover, the preference for valuing FOPs in a single surrogate country does not have an exception based on specificity. The data provided for HTS 4403.99 remains the best information available with which to value oak logs for Brazil, and Commerce's use of Malaysian data as surrogate values for logs is not supported by substantial evidence. Commerce's deviation from its standard practice in this case reflects a flawed methodology that allowed parties to argue input prices from different surrogate countries after the primary surrogate country had already been selected in order to achieve the desired valuations of those inputs, thus opening the door to margin shopping. As a result, this Court should find that Commerce erred by deviating from its established practice to value all factors of production from a single surrogate country.

Second, surrogate values based upon Malaysian log data are aberrational and their selective use by Commerce was not supported by substantial evidence or otherwise in accordance with law. The Court of Appeals for the Federal Circuit ("CAFC") instructs that Commerce should avoid the use of distorted surrogate prices. This Court has also instructed that in calculating normal value in NME context, the particular aim of the statute is to determine the non-distorted cost of producing such goods.

In the underlying review, Commerce deviated from its normal methodology and used Malaysian log data, which caused an aberrational result and a margin of 39.27 percent for Senmao. Commerce's *Final Results* cannot be viewed in a vacuum. Senmao has been one of the

---

[20] *See* Antidumping Duties; Countervailing Duties, 61 Fed. Reg. 7,308, 7,345 (Feb. 27, 1996).

major suppliers of multilayered wood flooring to U.S. customers since the original AD order and has regularly been selected as a mandatory respondent – in fact, in six of the first nine reviews. The highest AD margin assigned to Senmao in the prior proceedings was 13.74 percent in the 2nd review. In all others in which it was selected as a mandatory respondent, Commerce assigned Senmao zero or *de minims* AD rates, including a margin of 0.0 percent for Senmao in the 2018-2019 administrative review in which Commerce also used Brazil as a primary surrogate country.

When one considers the administrative record and the history of this case, there is no reasonable explanation how the selective use of Malaysian log data in this review is not distortive in this context. Commerce's disregard of the Brazilian logs surrogate value proposed by Senmao, without questioning the reliability or reasonableness of its own surrogate value choice, was insufficient under the substantial evidence standard and is directly contrary to the rulings of this Court. Commerce's disregard of log input data from the primary surrogate country and its decision to selectively use aberrational Malaysian log surrogate values establishes that the *Final Results* are not supported by substantial evidence in the administrative record.

In summation, the Court should remand this determination to Commerce to rectify the issues identified above.

## STANDARD OF REVIEW AND JURISDICTION

This Court must "hold unlawful any determination, finding, or conclusion found … to be unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). "Substantial evidence is more than a mere scintilla. It means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951), quoting *Consolidated Edison Corp. v. NLRB*, 305 U.S. 197, 229 (1938). This standard "requires more than mere assertion of 'evidence which

in and of itself justified {the determination}, without taking into account contradictory evidence or evidence from which conflicting inferences could be drawn.'" *Gerald Metals, Inc. v. United States*, 132 F.3d 716, 720 (Fed. Cir. 1997) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). The existence of substantial evidence must be determined in view of the record as a whole, including "whatever in the record fairly detracts from its weight." *Id.* (quoting *Universal Camera*, 340 U.S. at 488).

Plaintiff-Intervenor intervenes on this action pursuant to section 516A of the Tariff Act of 1930, as amended (19 U.S.C. §§ 1516a(a)(2)(A)(i)(I), 1516a(a)(2)(B)(iii), and 1516a(d)), which provides that certain antidumping or countervailing duty orders on the record are reviewable by this Court. This Court has exclusive jurisdiction of this action pursuant to 28 U.S.C. § 1581(c), which provides jurisdiction over civil actions commenced under 19 U.S.C. § 1516a. The standard of review, as set forth in section 516A(b)(1)(B)(i) of the Act and reviewed above, 19 U.S.C. § 1516a(b)(1)(B)(i), is whether the determinations, findings, or conclusions of Commerce were "unsupported by substantial evidence on the record, or otherwise not in accordance with law."

On July 1, 2022, Commerce published the *Final Results* in the Federal Register. Plaintiff-Intervenor filed its Consent Motion to Intervene as a Matter of Right on Monday, August 1, 2022, within 30 days of said publication.[21] Thus, Plaintiff-Intervenor's Motion was timely filed pursuant to 19 U.S.C. § 1516a(d) and USCIT Rule 24. On August 1, 2022, the Court granted Plaintiff-Intervenor's Motion to Intervene in Case No. 20-00190.[22]

---

[21] *See Jiangsu Senmao Bamboo and Wood Industry Co., Ltd. v. United States*, Ct. No. 20-00190, ECF No. 15 (Ct. Int'l Trade 2022).

[22] *See* Order on Motion to Intervene, ECF 19.

## ARGUMENT

### I. COMMERCE ERRED BY NOT VALUING ALL FACTORS OF PRODUCTION FROM A SINGLE SURROGATE COUNTRY

In non-market economy cases such as this, the statute requires that the "valuation of the factors of production shall be based upon the best available information regarding the values of such factors in market economy country or countries considered to be appropriate by the administering authority."[23] The CAFC has stated that "{i}n determining the valuation of the factors of production, the critical question is whether the methodology used by Commerce is based on the best available information and establishes antidumping margins as accurately as possible."[24]

Commerce's practice is to value all factors of production from a single surrogate country.[25] In the underlying administrative review, Commerce's decision to select Brazil as the primary surrogate country, while rejecting the Brazilian log data (and relying on log inputs from Malaysia instead), adjusting Brazilian plywood data, and revising the Brazilian financial ratios was not supported by substantial evidence or otherwise in accordance with law.

For the *Final Results*, Commerce continued to value Senmao's oak logs using Malaysian surrogate values under Harmonized Tariff Schedule ("HTS") 4403.91.1000 and non-oak logs

---

[23] 19 U.S.C. § 1677b(c)(1). The purpose of the non-market economy methodology is to "construct the product's price as it would have been if the NME country were a market economy, using the best information available regarding surrogate values." *Air Products and Chemicals, Inc. v. United States*, 14 F. Supp. 2d 737, 741 (Ct. Int'l Trade 1998).

[24] *Shakeproof Assembly Components, Div. of Ill. Toolworks Inc. v. United States*, 268 F. 3d 1376, 1382 (Fed. Cir. 2001); *see also Lasko Metal Prods. Inc. v. United States*, 43 F. 3d 1442, 1446 (Fed. Cir. 1994).

[25] *See* 19. C.F.R. § 351.408(c)(2); *see also Antidumping Duties; Countervailing Duties*, 61 Fed. Reg. 7,345 (Feb. 27, 1996).

using Malaysian basket category 4403.99.00. Commerce claimed that the Malaysian surrogate values for logs were more specific to Senmao's log inputs than the Brazilian surrogate values. Commerce adopted this methodology in the *Preliminary Results*, claiming that Malaysian 4403.91.1000, {"Oak Wood In The Rough, Whether Or Not Stripped Of Bark Or Sapwood Or Roughly Squared, Not Treated: Of Oak (Quercus Spp.): Baulks, Sawlogs And Veneer Logs,"} was more specific to Senmao's oak logs than the Brazilian 4403.99, {"Nonconiferous Wood In The Rough, Nesoi, Whether Or Not Stripped Of Bark Or Sapwood Or Roughly Squared, Not Treated."} Commerce valued these logs with Malaysian 4403.91.1000 and valued Senmao's remaining logs with Malaysian basket category HTS 4403.99.00, {"Other Wood, In Rough,"} to "avoid potentially double counting oak log SVs that may be included in the Brazilian basket category."[26]

Commerce preference under 19 C.F.R. §351.408(c)(2) is that it "normally will value all factors in a single surrogate country." The agency has consistently held that "it is Commerce's well-established practice to rely upon the primary surrogate country for all surrogate values, whenever possible, and to only resort to a secondary surrogate country if data from the primary surrogate country are unavailable or unreliable."[27] In promulgating Commerce' regulations, it was explained that "{t}he preference for using a single country... is meant to prevent parties from 'margin shopping': i.e., to prevent parties from arguing that the Department combine input

---

[26] Memorandum to the File: *Antidumping Duty Administrative Review of Multilayered Wood Flooring from the People's Republic of China; 2019-2020: Surrogate Values for the Preliminary Results*, at 2 (Dec. 17, 2021).

[27] *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China: Final Results of Antidumping Duty Administrative Review and Final Determination of No* Shipments*; 2016- 2017*, 84 Fed. Reg. 36,886 (July 30, 2019) and Issues and Decision Memorandum, at Comment 13.

prices from different surrogates to achieve the highest or lowest valuations of those inputs."[28] Yet, Commerce appears to be guilty of precisely the activity its preference seeks to discourage.

Commerce has explained, "{t}he Court of International Trade has held this preference for valuing FOPs with information from a single surrogate country reasonable because deriving surrogate data from one surrogate country limits the amount of distortion introduced into the calculations because a domestic producer would be more likely to purchase a product available in the domestic market."[29] "{T}he court must treat seriously (Commerce's) preference for the use of a single surrogate country."[30]

Moreover, the preference for valuing FOPs in a single surrogate country does not have an exception based on specificity. In other words, a surrogate country preference is not an *a la carte* menu - Commerce cannot simply jump from a primary surrogate country to shop for an SV that better suits its taste based simply on an assumption that there is no specifically made input in the primary country. Understandably, Commerce is afforded certain discretion in selecting surrogate values. But using multiple surrogate countries based on a fragile premise, when doing so is already highly unusual in this and other proceedings, is an abuse of that discretion.

Moreover, in this case, the record does not support a conclusion that the Brazilian log data is either unavailable or unreliable. Commerce does not cite to any record evidence suggesting that oak logs would have a significantly different value than the value reported for

---

[28] Antidumping Duties; Countervailing Duties, 61 Fed. Reg. 7,308, 7,345 (Feb. 27, 1996) (emphasis added).

[29] *Xanthan Gum from the People's Republic of China: Final Determination of Sales at Less Than Fair Value*, 78 Fed. Reg. 33,350 (June 4, 2013) and accompanying Issues and Decision Memorandum, at Comment 2; citing *Clearon Corporation and Occidental Chemical Corp. v. United States*, 37 C.I.T. 220 (Ct. Int'l Trade 2013).

[30] *Clearon Corporation v. United States*, 37 C.I.T. 220, 228 (Ct. Int'l Trade 2013).

other log species under Brazilian subheading 4403.99. As a result, the data provided for HTS 4403.99 remains the best information available with which to value oak logs for Brazil and Commerce's use of Malaysian data as surrogate values for logs is not supported by substantial evidence.

## II. SURROGATE VALUES BASED ON MALAYSIAN LOG DATA ARE ABBERATIONAL AND ARE NOT SUPPORTED BY SUBSTANTIAL EVIDENCE

The *Final Results* must be reversed because Commerce relied on aberrational Malaysian import data to value Senmao's logs instead of using Brazilian import data for this purpose. The use of aberrational Malaysian surrogate prices to value these logs greatly overstated Senmao's margins in this review, which Commerce determined to be 39.27 percent. This margin is <u>39 percentage points</u> higher than Commerce's calculated margin of 0.0 percent for Senmao in the 2018-2019 administrative review in which Commerce also used Brazil as a primary surrogate country.[31] Here, Commerce completely disregarded the impact of its decision to include surrogate value data from a non-primary surrogate country, *i.e.*, Malaysia. Commerce simply concluded that since it "continues to rely on Malaysian SVs to value all of Senmao's log inputs, the matter of whether the Brazilian data for HS 4403.99 are aberrational is moot."[32] However, that is not the concern. Rather, it is the unwarranted use of *Malaysian* log data that caused an aberrational result. Commerce's results-driven methodology disregarded years of context in this

---

[31] *See Multilayered Wood Flooring From the People's Republic of China: Final Results of Antidumping Duty Administrative Review, Final Successor-in-Interest Determination, and Final Determination of No Shipments; 2018-2019*, 86 Fed. Reg. 59987 (October 29, 2021); and accompanying Issues and Decision Memorandum; *see also* Memorandum to the File: *Antidumping Duty Administrative Review of Multilayered Wood Flooring from the People's Republic of China; 2018-2019: Surrogate Values for the Preliminary Results* (April 19, 2021).

[32] Final IDM at 23.

proceeding and glossed over its established preference for valuing all factors of production from a single country.

The CAFC has made clear that Commerce should "avoid the use of distorted surrogate prices."[33] This Court has also instructed that "{i}n calculating normal value in NME context, the particular aim of the statute is to determine the non-distorted cost of producing such goods."[34]

Thus, when "confronted with a colorable claim that the data that Commerce is considering is aberrational, Commerce must examine the data and provide a reasoned explanation as to why the data it chooses is reliable and non-distortive."[35] When one considers the administrative record and the history of this case, there is no reasonable explanation how the selective use of Malaysian log data is not distortive in this context. Commerce's attempted justification that "we are not disregarding Brazilian data simply because these data are less specific to Senmao's logs, but rather because we cannot conclude on this record that they are specific at all with respect to Senmao's oak logs" is unpersuasive and is rather rash considering how great an impact this decision had on the margin, especially in light of the fact that oak logs are just one of the species used by Senmao to make flooring.

Commerce's *Final Results* cannot be viewed in a vacuum. Senmao has been one of the major suppliers of multilayered wood flooring to U.S. customers since the original AD order. In

---

[33] *Nation Ford Chem. Co. v. United States*, 166 F.3d 1373, 1378 (Fed. Cir. 1999).

[34] *CS Wind Vietnam Co. v. United States*, 38 C.I.T. 376, 379 (Ct. Int'l Trade 2014).

[35] *Mittal Steel Galati S.A. v. United States*, 502 F. Supp. 2d 1295, 1308 (Ct. Int'l Trade 2014).

fact, Senmao was selected as a mandatory respondent by Commerce in the 2nd,[36] 4th,[37] 5th,[38] 6th,[39] 8th,[40] and now this 9th annual administrative review. The highest AD margin assigned to it in those proceedings prior to this one was 13.74 percent in the 2nd review. In all the others Commerce assigned Senmao as a mandatory respondent zero or *de minims* AD rates.

Commerce's decision to selectively use Malaysian data to value Senmao's logs was unnecessary, unorthodox and unreasonable in this instance. As its low margins in prior reviews demonstrate, Senmao made a concerted long-term effort to ensure its prices to U.S. customers were sufficiently high so as not to generate dumping margins. Indeed, Senmao's margin the *Preliminary Results* of the underlying review was 0.0 percent. It is reasonable to assume that Senmao fully expected to receive a zero margin, even taking into account normal variances in the valuation of surrogate prices and financial ratios. However, for the *Final Results* Commerce improperly deviated from its normal methodology and cherry-picked Malaysian log data to

---

[36] *See Multilayered Wood Flooring From the People's Republic of China: Final Results of Antidumping Duty Administrative Review and Final Results of New Shipper Review; 2012-2013*, 80 Fed. Reg. 41476 (July 15, 2015).

[37] *See Multilayered Wood Flooring From the People's Republic of China: Final Results of Antidumping Duty Administrative Review, Final Determination of No Shipments, and Final Partial Rescission of Antidumping Duty Administrative Review; 2014-2015*, 82 Fed. Reg. 25766 (June 5, 2017).

[38] *See Multilayered Wood Flooring From the People's Republic of China: Final Results of Antidumping Duty Administrative Review, Final Determination of No Shipments, and Final Partial Rescission; 2015-2016*, 83 Fed. Reg.35461 (July 26, 2018).

[39] *See Multilayered Wood Flooring From the People's Republic of China: Final Results of Antidumping Duty Administrative Review, Final Determination of No Shipments; 2016-2017*, 84 Fed. Reg. 38002 (August 5, 2019).

[40] *See Multilayered Wood Flooring From the People's Republic of China: Final Results of Antidumping Duty Administrative Review, Final Successor-in-Interest Determination, and Final Determination of No Shipments; 2018-2019*, 86 Fed. Reg. 59987 (October 29, 2021).

arrive at a margin of 39.27 percent, which defies commercial and economic reality. A 39 percent margin implies that Senmao's production costs during the period of review suddenly ballooned to nearly forty times its current U.S. sales prices since, as a mandatory respondent in the 8th annual review, Senmao was assigned a 0.0 percent margin by Commerce.[41] If this margin reflected commercial reality, Senmao would have suffered huge operating losses during the period of review. However, nothing in the administrative record establishes that Senmao incurred such losses during the period of review. Plainly, Senmao would not be in business if Commerce's results were a reasonable reflection of commercial reality. In short, a reasonable mind could not conclude that Commerce chose the best available information in this instance.[42]

Given the magnitude of the discrepancy caused by Commerce's selective use of Malaysian log data and the resulting, distorted margin, it is difficult to fathom how Commerce decided that oak logs are not included in the Brazilian data for HTS 4403.99 and that its "not Commerce's responsibility to build an adequate record for parties" by requesting additional Brazilian data on the record as Senmao proposed.[43] Yet, despite its "preference for valuing FOPs with as few surrogate countries as possible, in the interest of accuracy"[44] Commerce erred by relying on Malaysian log data which distorted the surrogate value calculations and resulting margins. This Court has observed that "{a}bsent record evidence to explain a disparity of this

---

[41] *Id.*

[42] *Zhejiang DunAn Hetian Metal Co. v. United States*, 652 F.3d 1333, 1341 (Fed. Cir. 2011).

[43] Final IDM at 22.

[44] *Id.,* (*citing* Policy Bulletin No. 04.1: Non-Market Economy Surrogate Country Selection Process (March 1, 2004), at note 7, available on Commerce's website at https://enforcement.trade.gov/policy/bull04-1 html).

size calls into serious question Commerce's finding" and {b}ecause nothing on the record resolves that serious question, the court is unable to conclude that Commerce's choice was based on substantial evidence."[45] Moreover, the "absence of evidence corroborating the price reflected by the {Indonesian} import data is evidence that detracts from, rather than supports, a finding that this price is based on the best available information."[46]

By limiting its analysis only to the alleged – and heretofore unproblematic -- shortcoming of the Brazilian data for HTS 4403.99, Commerce's *Final Results* were not supported by substantial evidence on the record. Commerce is required to calculate surrogate values "based on the best available information."[47] Because the "best" choice is determined by comparing the advantages and disadvantages of surrogate information on the record, by necessity, all relevant data should be reviewed, considered and compared. Under the circumstances of this case, Commerce was required to determine the reasonableness of the Malaysian log data in light of the primary surrogate country Brazilian data placed on the record by Senmao. "Commerce's analysis must do more than simply identify flaws in the data it rejects."[48] Commerce cannot be permitted to select a surrogate value by default. Rather, the agency is required to "evaluate the reliability of

---

[45] *Peer Bearing Company-Changshan v. United States*, 752 F. Supp. 2d 1353, 1371 (Ct. Int'l Trade 2011).

[46] *Id. see also Zhejiang Native Produce & Animal By-Products Import & Export Corp. v. United States*, 27 CIT 1827 Slip Op. 03-151, at 45 (Ct. Int'l Trade 2003) (the magnitude of the difference "calls into question Commerce's methodology and the evidence on which it relied.").

[47] 19 U.S.C. § 1677b(c)(1).

[48] *Guangdong Chems. Imp. & Exp. Corp. v. United States*, 460 F. Supp 2d 1365, 1369 (Ct. Int'l Trade 2006).

its own choice."[49] Here, as in *Xinjianmei Furniture,* "{i}t is apparent that Commerce skipped a critical step by failing to explain, why in light of the foregoing, its GTA data would not produce an aberrational surrogate value."[50]

Commerce's *Final Results* in the underlying proceeding are similarly unacceptable. Commerce made scant effort to determine the reliability of its chosen surrogate for logs and discarded its established preference to value all FOPs in a single surrogate country. Commerce's disregard of the Brazilian logs surrogate value proposed by Senmao, without questioning the reliability or reasonableness of its own surrogate value choice, was insufficient under the substantial evidence standard and directly contrary to the rulings of this Court. Choosing the "best available information" is ascertained by examining and comparing the advantages and disadvantages of using certain data as opposed to other data.[51] Here, Commerce's disregard of log data from the primary surrogate country and its decision to selectively use aberrational Malaysian log surrogate values establishes that the *Final Results* are not supported by substantial evidence in the administrative record.

---

[49] *Shanghai Foreign Trade Enters. Ltd. v. United States*, 318 F. Supp 1339, 1351 (Ct. Int'l Trade 2004).

[50] *Xinjiamei Furniture (Zhangzhou) Co., v. United States*, 37 C.I.T. 308, 316 (Ct. Int'l Trade 2013).

[51] *Association of Am. School Paper Suppliers v. United States*, 716 F. Supp. 2d, 1329, 1334 (Ct. Int'l Trade 2010).

**CONCLUSION**

For the foregoing reasons, Commerce's *Final Results* are unsupported by substantial

evidence and otherwise not in accordance with law. Plaintiff-Intervenor respectfully requests

that this Court remand this matter to Commerce so that the agency may fix the errors identified

above.

Respectfully Submitted,

/s/ Mark Ludwikowski
Mark Ludwikowski
Kelsey Christensen
**CLARK HILL, PLC**

1001 Pennsylvania Ave., N.W.
Suite 1300 South
Washington, D.C. 20004
(202) 640-6680
mludwikowski@ClarkHill.com
*Attorneys for Plaintiff-Intervenor*

Dated: November 8, 2022

## CERTIFICATE OF COMPLIANCE

Pursuant to Chamber Procedure 2(B)(1), the undersigned certifies that this brief complies with the word limitation requirement. The word count for Plaintiff-Intervenor's Memorandum of Law in Support of its 56.2 Motion, as computed by Clark Hill's word processing system Microsoft Office Professional, is 6,327 words, less than the 14,000 word limit.

*/s/ Mark Ludwikowski*
Mark Ludwikowski

*Counsel for Plaintiff-Intervenor*

Dated: November 8, 2022

**CERTIFICATE OF SERVICE**

A true and accurate copy of the foregoing was electronically filed on November 8, 2022, via the

Court's ECF filing system, which automatically serves notice on counsel of record.

*/s/ Mark Ludwikowski*
Mark Ludwikowski

*Counsel for Plaintiff-Intervenor*

Dated: November 8, 2022