**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| **JIANGSU SENMAO BAMBOO AND WOOD INDUSTRY CO., LTD.,** | |
| **Plaintiff,** | **Before: Hon. Jennifer Choe-Groves, Judge** |
| **and** | |
| **LUMBER LIQUIDATORS SERVICES, LLC,** | **Consol. Court No. 22-00190** |
| **Plaintiff-Intervenor,** | |
| **v.** | |
| **UNITED STATES,** | |
| **Defendant,** | |
| **and** | |
| **AMERICAN MANUFACTURERS OF MULTILAYERED WOOD FLOORING,** | |
| **Defendant-Intervenor.** | |

**DEFENDANT- INTERVENOR AMERICAN MANUFACTURERS OF MULTILAYERED WOOD FLOORING'S COMMENTS IN SUPPORT OF REMAND DETERMINATION**

Timothy C. Brightbill, Esq.
Stephanie M. Bell, Esq.

WILEY REIN LLP
2050 M Street, NW
Washington, DC 20036
(202) 719-7000

*Counsel to American Manufacturers of Multilayered Wood Flooring*

**Dated: January 8, 2024**

Consol. Ct. No. 22-00190

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................ 1

II.    BACKGROUND ................................................................................................. 1

III.   ARGUMENT ..................................................................................................... 3

       A.     Commerce's Use of Malaysian Data for the Oak Log Surrogate
             Value Is Supported by Substantial Evidence and Otherwise in
             Accordance with Law ................................................................................5

       B.     Commerce's Adjustment to the Brazilian Plywood Data Is
             Supported by Substantial Evidence and Otherwise in Accordance
             with Law ....................................................................................................9

IV.   CONCLUSION.............................................................................................. 13

Consol. Ct. No. 22-00190

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Calgon Carbon Corp. v. United States,*
    145 F. Supp. 3d 1312 (Ct. Int'l Trade 2016) ...............................................................6

*Camau Frozen Seafood Processing Imp. Exp. Corp. v. United States,*
    37 CIT 1116, 929 F. Supp. 2d 1352 (2013)...............................................................6

*Carbon Activated Tianjin Co. v. United States,*
    547 F. Supp. 3d 1310 (Ct. Int'l Trade 2021) ...............................................................5

*Clearon Corporation and Occidental Chemical Corp. v. United States,*
    37 CIT 220 (2013) ...............................................................7

*Fujian Machinery and Equipment v. United States,*
    178 F. Supp. 2d 1305 (Ct. Int'l Trade 2001) ...............................................................4

*Jiangsu Senmao Bamboo and Wood Industry Co. v. United States,*
    651 F. Supp. 3d 1348 (Ct. Int'l Trade 2023) ...............................................................1, 2

*Jiaxing Bro. Fastener Co. v. United States,*
    11 F. Supp. 3d 1326 (Ct. Int'l Trade 2014) ...............................................................7, 8

*M S Int'l, Inc. v. United States,*
    547 F. Supp. 3d 1254 (Ct. Int'l Trade 2021) ...............................................................7, 8

*Peer Bearing Co.-Changshan v. United States,*
    35 CIT 103, 752 F. Supp. 2d 1353 (2011) ...............................................................6

*Shikoku Chemicals Corp. v. United States,*
    795 F. Supp. 417 (Ct. Int'l Trade 1992) ...............................................................4

*United Steel & Fasteners, Inc. v. United States,*
    469 F. Supp. 3d 1390 (Ct. Int'l Trade 2020) ...............................................................8

**Statutes**

19 U.S.C. § 1677b(c) ...............................................................3, 5

**Administrative Materials**

*Multilayered Wood Flooring from the People's Republic of China,*
    87 Fed. Reg. 39,464 (Dep't Commerce July 1, 2022) ...............................................................1

Consol. Ct. No. 22-00190

*Xanthan Gum from the People's Republic of China*,
   82 Fed. Reg. 11,428 (Dep't Commerce Feb. 23, 2017)............................................................5

Consol. Ct. No. 22-00190

## I.      INTRODUCTION

On behalf of the American Manufacturers of Multilayered Wood Flooring ("AMMWF"), defendant-intervenor in this action, we submit the following comments in support of the Final Results of the Redetermination Pursuant to Remand Order ("Final Remand Results"), filed by the U.S. Department of Commerce ("Commerce") on October 25, 2023, ECF No. 55. For the reasons provided herein, AMMWF respectfully requests that the Court sustain the Final Remand Results by Commerce.

## II.     BACKGROUND

These remand proceedings arise from the 2019-2020 administrative review of the antidumping duty order on multilayered wood flooring from the People's Republic of China. *See Multilayered Wood Flooring from the People's Republic of China*, 87 Fed. Reg. 39,464 (Dep't Commerce July 1, 2022) (final results of antidumping duty admin. rev. and final deter. of no shipments; 2019-2020), P.R. 252 and accompanying Issues and Decision Memorandum, P.R. 245 ("IDM").[1] Plaintiff Jiangsu Senmao Bamboo and Wood Industry Co., Ltd. ("Senmao") and Plaintiff-Intervenor Lumber Liquidators Services, LLC ("Lumber Liquidators") (collectively, "Plaintiffs") had challenged certain aspects of Commerce's determination in that administrative review regarding the surrogate values relied on by the agency to calculate normal value, as well as Commerce's denial of a by-product offset to Senmao. *See Jiangsu Senmao Bamboo and Wood Industry Co. v. United States*, 651 F. Supp. 3d 1348, 1353 (Ct. Int'l Trade 2023). In its opinion,

---

[1]      Documents on the public record of the underlying administrative proceeding are identified here as "P.R.," followed by the number assigned to the relevant document in the administrative record index filed with the Court on August 30, 2022, ECF No. 33. Documents in the confidential administrative record are identified by name, followed by "C.R." and the corresponding record number. Documents on the public and confidential remand record are identified here as "P.R.R." and "C.R.R.," respectively, followed by the number assigned to the relevant documents in the administrative record index filed with the Court on November 8, 2023, ECF No. 56.

the Court sustained Commerce's determination in part, but remanded for the agency to further explain two aspects of its final determination. *Id.* at 1369. First, the Court found that the Department did not "cite any record evidence demonstrating that the Brazilian data on log inputs was highly questionable, inadequate, or unavailable and would therefore warrant a departure from a single surrogate country." *Id.* at 1357. Accordingly, the Court found that the Department did not sufficiently support its selection of Malaysian data to value logs. *Id.* at 1357-59. Second, with respect to Commerce's revision to the plywood surrogate value, the Court found that the evidence on which the agency relied to support its decision was not submitted to the Court and, thus, the Court could not review the exhibit. *Id.* at 1360-61. As a result, the Court concluded that the Commerce's determination was not sufficiently supported. *Id.*

In its draft remand results, Commerce modified its selection of the surrogate value for logs. Draft Results of Redetermination Pursuant to the Remand Order (Oct. 3, 2023) ("Draft Remand"), P.R.R. 1 at 2. In particular, the Commerce relied on Brazilian import data under Harmonized Tariff Schedule ("HTS") subheading 4403.99 to value both oak and non-oak logs. *Id.* at 2-3. Additionally, Commerce provided further information regarding its basis for revising the Brazilian plywood data. *Id.* at 6. Specifically, Commerce highlighted Exhibit 9 of AMMWF's Surrogate Value Comments as supporting its determination that certain data in the Brazilian plywood import data were in error because the quantity reported in cubic meters ("M3") and in kilograms ("KG") was the same, which is an impossibility. *Id.* at 5. On this basis, Commerce continued to exclude certain Spanish data from the surrogate value calculation. *Id.* at 6.

In comments on the draft remand determination, AMMWF agreed that Commerce properly continued to rely on Brazilian data adjusted to exclude certain Spanish data for the plywood surrogate value. Letter from Wiley Rein LLP to Sec'y Commerce, re: *Multilayered Wood Flooring*

Consol. Ct. No. 22-00190

*from the People's Republic of China: Comments on Draft Remand Determination* (Oct. 12, 2023) at 7-8 ("AMMWF Draft Remand Comments"), P.R.R. 7. However, AMMWF explained that Commerce's use of Brazilian data to value Senmao's oak logs was not supported by the record. *Id.* at 3-7. Specifically, AMMWF highlighted that the HTS identified oak logs under subcategory 4403.91 and other (*i.e.*, non-oak) logs under subcategory 4403.99; as oak logs are specifically categorized under HTS 4403.91, oak logs could not fall under HTS 4403.99. *Id.* at 4-5. Accordingly, by relying on Brazilian import data under HTS 4403.99 to value oak logs, Commerce was using data that did not encompass the input in question. *Id.* at 3-7. Further, as the record contained information from Malaysia to value oak logs—specifically, import data under HTS 4403.91—it was appropriate for Commerce to rely on the Malaysian data. *Id.*

On October 25, 2023, Commerce released its Final Remand Results. In doing so, Commerce explained that Brazilian data to value oak logs was unavailable and, therefore, that it was appropriate to use Malaysian import data for HTS 4403.91 to value this input. *See* Final Remand Results at 6. Commerce also continued to use adjusted Brazilian import data for the plywood surrogate value, as the record demonstrated that certain import data were incorrect and thus should be removed from the surrogate value calculation. *See id.* at 7-8.

## III.   <u>ARGUMENT</u>

Commerce's remand results are supported by the record, adequately explained, and otherwise in accordance with law. As discussed below, with respect to both of the issues before the Court, Commerce has made its determination based on the record as a whole, has explained how the facts support its ultimate conclusions, and has demonstrated how its determinations are consistent with its practice and statutory obligation to rely on the best available information in selecting surrogate values. *See* 19 U.S.C. § 1677b(c). While Plaintiffs claim that the Final Remand

Consol. Ct. No. 22-00190

Results are unreasonable and inconsistent with law, these arguments are unavailing and should be rejected. Plaintiff's Comments in Opposition to Remand Redetermination (Dec. 8, 2023), ECF No. 57 ("Senmao's Remand Comments"); Lumber Liquidators' Comments in Opposition to the Remand Determination (Dec. 8, 2023), ECF No. 58 ("Lumber Liquidators' Comments").[2] Accordingly, Commerce's Final Remand Results should be sustained.

As an initial matter, Plaintiffs assert that Commerce "went margin shopping" when issuing its determination in this proceeding. Senmao's Remand Comments at 5-6. Plaintiffs provide no support for this claim and rely only on the fact that the calculated dumping margin has changed over the course of this proceeding. *Id.* However, it is unclear how the fact that the margin has changed based on changes in Commerce's determination somehow undermines the agency's findings. Indeed, if the Commerce's determinations at issue here had no or minimal impact on the margin, then these issues would presumably not be before this Court. Plaintiffs' argument that they had a "substantial reliance interest in Commerce following its longstanding practices" is likewise unavailing. *Id.* at 6-7. To start, the cases on which Plaintiffs rely to support this argument are inapposite, as they both address Commerce modifications to how a respondent should report its data. *Fujian Machinery and Equipment v. United States*, 178 F. Supp. 2d 1305, 1326 (Ct. Int'l Trade 2001) (addressing argument that Commerce abused its discretion by refusing to accept reporting that had accepted in prior reviews); *Shikoku Chemicals Corp. v. United States*, 795 F. Supp. 417, 418 (Ct. Int'l Trade 1992) (addressing argument that Commerce unfairly departed from how it had previously calculated a price adjustment). No such reliance is present here, as Commerce must make an independent determination regarding surrogate values in each

---

[2]    In its comments, Lumber Liquidators states only that it incorporates by reference Senmao's comments and has not presented any additional or separate argument. Lumber Liquidators' Comments at 1. As such, AMMWF does not further address these comments herein.

proceeding based on the record evidence for that proceeding. Moreover, as discussed in detail below, Commerce's determination here is consistent with its practice, court precedent, and statutory instruction. Consequently, these arguments should be rejected.

### A.   Commerce's Use of Malaysian Data for the Oak Log Surrogate Value Is Supported by Substantial Evidence and Otherwise in Accordance with Law

To calculate costs in an antidumping proceeding for a nonmarket economy ("NME") country, the statute instructs Commerce to value a respondent's factors of production ("FOPs") using the best available information. 19 U.S.C. § 1677b(c). To implement this statutory directive, Commerce prefers to rely on the data that are most specific to the input at issue when selecting among possible surrogate values. *See, e.g.*, Issues and Decision Memorandum accompanying *Xanthan Gum from the People's Republic of China*, 82 Fed. Reg. 11,428 (Dep't Commerce Feb. 23, 2017) (final results of antidumping duty admin. rev.; 2013-2014) at 69. As the agency has explained, "{w}hen the Department has determined that a certain HTS category is the most specific category which matches the respondent's consumed input, its practice is to use the weighted-average value of imports under that specific HTS category as the best available surrogate value." *Id.* Moreover, "Commerce has broad discretion to determine what constitutes 'the best available information' for the selection of surrogate values." *Carbon Activated Tianjin Co. v. United States*, 547 F. Supp. 3d 1310, 1314 (Ct. Int'l Trade 2021).

Following this practice, Commerce in its Final Remand Results relied on Malaysian import data to value Senmao's oak log inputs. *See* Final Remand Results at 13-15. As Commerce explained, the HTS differentiates between oak logs and other species of logs, with HTS 4403.91 being the appropriate category for valuing oak logs. *Id.* The record also showed that there were no Brazilian imports under HTS 4403.91 for the period of review ("POR") and thus no Brazilian import data for oak logs. *Id.* The record did, however, contain Malaysian import data under HTS

Consol. Ct. No. 22-00190

4403.91 for the POR. *Id.* Thus, Commerce explained that, due to the lack of available of data for Brazilian imports of oak logs, it was appropriate to rely on data from a secondary surrogate country for this input. *Id.* at 15.

In challenging this determination, Plaintiffs assert that it was improper for Commerce to rely on data from Malaysia because Brazil was the primary surrogate country. Senmao Remand Cmts. at 7-10. This argument does not persuade. While Commerce does prefer to value all data using the primary surrogate country, the Court has made clear that this preference cannot be used to overcome or ignore questions regarding the suitability of the primary surrogate country's data. *See, e.g.*, *Diamond Sawblades Mfrs.' Coal. v. United States*, Ct. No. 17-00167, slip op. 18-146 at 25 (Ct. Int'l Trade Oct. 23, 2018) ("The regulatory preference for valuing inputs for an NME respondent's production using data from a single 'primary' surrogate country has been held insufficient to explain decisions to reject data from a non-primary surrogate country if questions remain unanswered as to the suitability of the primary surrogate country data."). This Court has explained that Commerce may rely on this preference when it is used to support the selection of one set of data where the other available data are fairly considered to be equal. *See Calgon Carbon Corp. v. United States*, 145 F. Supp. 3d 1312, 1327-28 (Ct. Int'l Trade 2016). However, "it is not sufficient for {the Department} to cite the policy of using a single surrogate country where . . . there is reason to believe that the primary surrogate country may not provide the best available information for a particular FOP." *Camau Frozen Seafood Processing Imp. Exp. Corp. v. United States*, 37 CIT 1116, 1120, 929 F. Supp. 2d 1352, 1355 (2013).

In fact, Commerce would run afoul of its statutory obligation to rely on the best available information if it were to use data from the primary surrogate country solely based on this preference. *See Peer Bearing Co.-Changshan v. United States*, 35 CIT 103, 124-125, 752 F. Supp.

2d 1353, 1373 (2011), *vacated on other grounds*, 766 F.3d 1396 (Fed. Cir. 2014). As the Court recently explained, "it is not enough for Commerce to say 'the alternate data are insufficient because they are from a different surrogate country' or 'are from two years earlier'—rather, when 'there is reason to doubt the primary surrogate country value, Commerce must address the conflicting evidence on the record that may counsel against' Commerce's preference for a single surrogate country." *New Am. Keg, d/b/a Am. Keg Co. v. United States*, Ct. No. 20-00008, slip op. 21-30 at 34-35 (Ct. Int'l Trade Mar. 23, 2021) (quoting *Camau Frozen*, 37 CIT at 1120, 929 F. Supp. 2d at 1356). Here, Commerce acknowledged these considerations in its Final Remand Results. The agency recognized its preference for relying on the primary surrogate country for all surrogate values but explained that this preference was overcome because data to value oak logs were not available from the primary surrogate country. Final Remand Results at 13-14.

Plaintiffs do not contest this practice. Indeed, even the cases on which they rely highlight that Commerce cannot rely on its preference for a single surrogate country to overcome shortcomings in data. Senmao Remand Cmts. at 8-9; *Clearon Corporation and Occidental Chemical Corp. v. United States*, 37 CIT 220, 225, 229 (2013) (explaining that the preference for data from a single country could be used in a "tiebreaking" scenario, when "both sources of data" were potentially usable but highlighting that relying on a single country "is justified when, as here, all other factors are 'fairly equal'"); *New Am. Keg, d/b/a Am. Keg Co. v. United States*, Ct. No. 20-00008, slip op. 21-30 at 34 (Ct. Int'l Trade Mar. 23, 2021) (noting that the preference for using data from the primary surrogate country can serve as an "acceptable tiebreaker{}, provided Commerce undertakes a fair comparison of the competing datasets").[3] Instead, Plaintiffs claim that

---

[3]     Plaintiffs also point to *Jiaxing Bro. Fastener Co. v. United States* and *M S Int'l, Inc. v. United States*, but in these cases the question before the Court was whether Commerce's selection of the primary surrogate country was supported; as such, whether the agency properly relied on

Consol. Ct. No. 22-00190

Commerce may not depart from the primary surrogate country where other data are more specific. *Senmao* Remand Cmts. at 8-9. This argument mischaracterizes the record. Commerce did not use Malaysian data because these data were more specific to the input in question than the data from Brazil; Commerce used Malaysia data because there was no comparable Brazilian oak log data for the POR at all. Final Remand Results at 15.

For this same reason, Plaintiffs' reliance on *United Steel & Fasteners, Inc. v. United States*, 469 F. Supp. 3d 1390 (Ct. Int'l Trade 2020), is misplaced. *Senmao* Remand Cmts. at 8-9. In *United Steel & Fasteners, Inc.*, the Court considered Commerce's reliance on import data from the primary surrogate country under HTS 7228.20 versus data from a secondary surrogate country under HTS 7228.20.1100. *Id.* at 1401-02. However, in that case, the data from the primary surrogate country was still "sufficiently specific." *Id.* In contrast, here, as noted above, Commerce's determination was not based simply on the greater specificity of the Malaysian data. Not only are the Malaysian data specific to oak logs, but the Brazilian import data for the POR specifically excluded oak logs. *See* Final Remand Results at 13-15; IDM at 22-23; AMMWF Draft Remand Comments at 4-7. In other words, Commerce was not faced with a choice of two surrogate values that covered the input in question, one of which was more specific; Commerce was faced with a choice of a surrogate value that was specific to the input in question and one which did not include the input in question at all. Accordingly, Commerce found that Malaysian import data were preferable for valuing Senmao's oak log inputs because "Brazilian oak log data for use in calculating Senmao's oak log inputs, i.e., HS category 4403.91, are unavailable for the POR."

---

certain data from a second surrogate country was not at issue. *Jiaxing Bro. Fastener Co. v. United States*, 11 F. Supp. 3d 1326 (Ct. Int'l Trade 2014); *M S Int'l, Inc. v. United States*, 547 F. Supp. 3d 1254 (Ct. Int'l Trade 2021).

Final Remand Results at 15. Commerce therefore properly relied on data from a secondary surrogate country because the two datasets could not be considered fairly equal. *Id.*

In sum, Commerce properly examined the record as a whole and found that Brazilian data to value oak logs was not available, necessitating the use of data from a secondary surrogate country. Plaintiffs fail to demonstrate that the Malaysian data are improper or that Brazilian data are more appropriate, claiming only that Commerce should use data from the primary surrogate country. However, to do so here would be inconsistent with Court precedent and Commerce's obligation to use the best available information. Thus, Commerce's use of Malaysian data for the oak log surrogate is supported by substantial evidence and otherwise in accordance with law.

### B.   Commerce's Adjustment to the Brazilian Plywood Data Is Supported by Substantial Evidence and Otherwise in Accordance with Law

In its Final Remand Results, Commerce determined that certain data included in the Brazilian import data under HTS 4412.33, which the agency used to value plywood, was "incorrect on its face." *Id.* at 16. Commerce explained that this was evident because the quantity expressed in M3, which measures volume, was the same as quantity expressed in KG, which measures weight. *Id.* In support of this conclusion, Commerce relied on record documentation showing that, for plywood, quantity expressed in M3 is not the same as quantity expressed in KG. *Id.* at 15-16. Accordingly, Commerce removed the erroneous data, which was limited to Spanish import data for January 2020, in calculating the plywood surrogate value. *Id.* at 15. Commerce explained that this decision was supported by the record and grounded in its commitment to calculate dumping margins as accurately as possible. *Id.* at 16 (citing *Shakeproof Assembly Components, Div. of Illinois Tool Works, Inc. v. United States*, 268 F.3d 1376, 1382 (CAFC 2001)).

In challenging this determination, Plaintiffs do no assert that the data at issue are in fact accurate. *See* Senmao Remand Cmts. at 12. Instead, Plaintiffs argue that Commerce's adjustment

Consol. Ct. No. 22-00190

of the plywood surrogate value was inconsistent with the agency's normal practice of determining

whether a surrogate value is aberrational by considering data in the aggregate, as opposed to

specific line items, and creates a new distinction between "aberrational" data and data that are

"somehow incorrect." *Id.* at 12-15. This, however, ignores Commerce's reasoning and the facts of

the record here. In its original determination, Commerce recognized arguments made regarding its

normal practice when faced with claims that surrogate value data are aberrational, explaining that,

> unlike the cases Senmao cites in support of its argument, in the instant administrative review, Commerce has determined that there is prima facie evidence that the January 2020 Spanish import component of the Brazilian SV is incorrect. Therefore, the concerns underlying Commerce's practice of evaluating SVs in the aggregate are not present here. In this regard, Commerce evaluates SVs on an aggregate basis out of administrative convenience – to avoid the "impossible task" of identifying and defining "what is and what is not aberrational among . . . thousands of data points spread along a vast spectrum of relatively high and low values" – and to discourage the cherry-picking and manipulation of data. Here, Commerce does not need to compare the January 2020 Spanish import data to any other import data to determine that the former is incorrect. Nor is this a case where a party is asking Commerce to remove data solely because they are too high or too low, but rather because they are clearly incorrect. Accordingly, we find that Commerce's practice regarding "aggregate testing" does not apply with respect to the January 2020 import data valuation of Senmao's plywood.

IDM. at 10. In its Final Remand Results, Commerce reiterated and further explained its approach

here:

> {a}lthough Commerce normally does not adjust SV data to account for line items that appear to be "too high" or "too low," in this instance, a portion of the data set, namely the January 2020 Spanish import data, is incorrect on its face because the quantity of plywood expressed in M3, which measures volume, cannot be the same as the quantity expressed in KG, which measures weight. Although one could disqualify an entire dataset for containing erroneous data, in this instance, it is unnecessary to do so because the problem can be easily remedied by removing a distinct subset of data that is limited to imports from a single country in a particular month.

Final Remand Results at 16.

Consol. Ct. No. 22-00190

As Plaintiffs themselves recognize, Commerce may depart from a prior practice so long as it provides a reasoned explanation for doing so. *See* Senmao Remand Cmts. at 11-13. Commerce has provided such an explanation here. Based on the specific facts of this record—including the fact that the data at issue are incorrect on their face and can easily be excluded from the surrogate value calculation—Commerce properly explained the approach it was taking and why it was appropriate to depart from prior practice. *See* Final Remand Results at 16. Plaintiffs do not argue, much less demonstrate, that this explanation was inadequate or otherwise improper; instead, they assert that Commerce provided no reasoning for its approach—a claim that is refuted by the record, as shown above. As such, Plaintiffs' claims that Commerce improperly departed from its practice are unpersuasive and should fail.

Plaintiffs also argue that Commerce has failed to demonstrate that the Brazilian data as adjusted constitute the best available information. Senmao Remand Cmts. at 15-16. Here, too, Plaintiffs' claims are unavailing and unsupported by the record. As Commerce explained, "{r}emoving a distinct and limited subset consisting of the clearly erroneous data" from the plywood surrogate value allowed for a more accurate dumping calculation. Final Remand Results at 16. Plaintiffs assert that the adjusted surrogate value is "less accurate" and "distorted" because it is based on a "subset" of the Brazilian data. Senmao Remand Cmts. at 15-16. But this overlooks the fact that the excluded data did not represent accurate Brazilian import data. *See* Final Remand Results at 15-16. In other words, inclusion of the Spanish data at issue would not somehow make the dataset complete or accurate.[4] Plaintiffs also argue that the difference in the calculated

---

[4]      AMMWF notes that it is Commerce's normal practice to exclude certain import data when calculating surrogate values. *See* Memorandum from Sergio Balbontin and Max Goldman, Int'l Trade Compl. Analysts, AD/CVD Operations, Off. VIII, to The File, re: *Antidumping Duty Administrative Review of Multilayered Wood Flooring from the People's Republic of China; 2019-2020: Surrogate Values for the Preliminary Results* (Dec. 17, 2021) at 3, P.R. 210. Specifically,

Consol. Ct. No. 22-00190

surrogate value before and after the adjustment somehow demonstrates that the data Commerce relied on is less accurate. Senmao Remand Cmts. at 16. But they fail to point to any record evidence to support this claim nor do they explain why a value that includes incorrect data is necessarily more accurate than a value that excludes incorrect data. *Id.*

In short, Plaintiffs are advocating for Commerce to rely on data that is indisputably incorrect. Plaintiffs have failed to put forth any reasonable basis why Commerce should be required to use a surrogate value that includes data the agency knows to be erroneous. When faced with record evidence demonstrating that data are incorrect, Commerce acts reasonably in excluding such data from its calculations. Indeed, doing so is consistent with its obligation to rely on the best available information and calculate dumping margins as accurately as possible. Accordingly, Commerce's adjustment to the plywood surrogate value is supported by the record and in accordance with law.

---

Commerce excludes import data from NMEs, countries found to provide non-industry-specific export subsidies, and unspecified countries. *Id.* Thus, Commerce is already relying on a subset of the Brazilian import data to calculate the surrogate value.

Consol. Ct. No. 22-00190

IV.   **<u>CONCLUSION</u>**

For the reasons detailed above, AMMWF respectfully requests that the Court reject the

arguments raised by Plaintiffs and sustain Commerce's Final Remand Results.

Respectfully submitted,

*/s/ Timothy C. Brightbill*
Timothy C. Brightbill, Esq.
Stephanie M. Bell, Esq.

**WILEY REIN LLP**
2050 M Street NW
Washington, DC 20036
(202) 719-7000

*Counsel to American Manufacturers of*
*Multilayered Wood Flooring*

Dated: January 8, 2024

<u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Chamber Procedure 2(B)(l), the undersigned certifies that this brief complies with the word limitation requirement. The word count for Defendant-Intervenor American Manufacturers of Multilayered Wood Flooring's Comments in Support of Remand Determination, as computed by Wiley Rein LLP's word processing system (Microsoft Word 2019), is 4,005.


<u>/s/ Timothy C. Brightbill</u>
(Signature of Attorney)

<u>Timothy C. Brightbill</u>
(Name of Attorney)

<u>American Manufacturers of Multilayered Wood Flooring</u>
(Representative Of)

<u>January 8, 2024</u>
(Date)