**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE:  THE HONORABLE JENNIFER CHOE-GROVES, JUDGE**

|  |  |  |
|---|---|---|
| JIANGSU SENMAO BAMBOO AND WOOD INDUSTRY CO., LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| LUMBER LIQUIDATORS SERVICES, LLC, | ) | |
| | ) | |
| Plaintiff-Intervenor, | ) | |
| | ) | |
| v. | ) | Court No. 22-00190 |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| AMERICAN MANUFACTURERS OF MULTILAYERED WOOD FLOORING, | ) | |
| | ) | |
| Defendant-Intervenor. | ) | |

## <u>ORDER</u>

Upon consideration of the Department of Commerce's final results of redetermination pursuant to remand, defendant's response in support thereto, and all other pertinent papers, it is hereby

ORDERED that the remand results are sustained in their entirety; and further

ORDERED that final judgment is entered in favor of the United States.

Dated:_____, 2024          _____

    New York, NY                    JENNIFER CHOE-GROVES, JUDGE

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE:  THE HONORABLE JENNIFER CHOE-GROVES, JUDGE**

| | |
|---|---|
| JIANGSU SENMAO BAMBOO AND WOOD INDUSTRY CO., LTD.,<br><br>Plaintiff,<br><br>and<br><br>LUMBER LIQUIDATORS SERVICES, LLC,<br><br>Plaintiff-Intervenor,<br>v.<br><br>UNITED STATES,<br><br>Defendant,<br><br>and<br><br>AMERICAN MANUFACTURERS OF MULTILAYERED WOOD FLOORING,<br><br>Defendant-Intervenor. | Court No. 22-00190 |

## DEFENDANT'S RESPONSE TO COMMENTS ON REMAND RESULTS

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICA M. McCARTHY
Director

TARA K. HOGAN
Assistant Director

OF COUNSEL:
CHRISTOPHER KIMURA
Attorney
Office of the Chief Counsel
  for Trade Enforcement and Compliance
U.S. Department of Commerce
Washington, D.C.
Telephone:  (202) 482-0131


Dated January 8, 2024

KELLY M. GEDDES
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C.  20044
Telephone: (202) 307-2867
Email: kelly.geddes2@usdoj.gov

*Attorneys for Defendant*

# TABLE OF CONTENTS

BACKGROUND ................................................................................................. 2

ARGUMENT ..................................................................................................... 6

    I.     Standard of Review ................................................................................. 6

    II.    Commerce Reasonably Relied On The Malaysian Surrogate Value For Oak
        Logs And Has Complied With The Court's Remand Order ................................. 7

    III.   Commerce's Adjustment To The Brazilian Plywood Surrogate Value And
        Inclusion Of Exhibit 9 For The Court's Consideration Complies With The
        Court's Remand Order and Is Supported By Substantial Evidence and In
        Accordance With Law ......................................................................... 10

    IV.   Senmao's Arguments Concerning Its Past Rates And Past Administrative
        Reviews Should Not Be Considered ........................................................ 15

CONCLUSION ................................................................................................ 17

# TABLE OF AUTHORITIES

**Cases**

*Amanda Foods (Vietnam) Ltd. v. United States*, 774 F. Supp. 2d 1286 (Ct. Int'l Trade 2011)...... 7

*Bethlehem Steel Corp. v. United States*, 223 F. Supp. 2d 1372 (Ct. Int'l Trade 2002) ................. 7

*Boomerang Tube, LLC, TMK IP-SCO v. United States*, 856 F.3d 908 (Fed. Cir. 2017)............. 16

*Corinth Pipeworks Pipe Indus. SA v. United States*, 633 F. Supp. 3d 1314 (Ct. Int'l Trade 2023)
................................................................................................................................................................ 17

*Corus Staal BV v. United States*, 502 F.3d 1370 (Fed. Cir. 2007) .............................................. 16

*Fischer S.A. Comercio, Industria & Agricultura v. United States*, No. 12-00340, 2014 WL
2853909 (Ct. Int'l Trade May 27, 2014)...................................................................................... 17

*Jiaxing Brother Fastener Co. v. United States*, 822 F.3d 1289 (Fed. Cir. 2016) ......................... 16

*Lasko Metal Prods., Inc. v. United States*, 43 F.3d 1442 (Fed. Cir. 1994).................................. 14

*Nan Ya Plastics Corp. v. United States*, 810 F.3d 1333 (Fed. Cir. 2016).................................... 14

*Novosteel SA v. United States*, 284 F.3d 1261 (Fed. Cir. 2002) ................................................... 16

*Peer Bearing Co. v. United States*, 587 F. Supp. 2d 1319 (Ct. Int'l Trade 2008) ....................... 16

*Shakeproof Assembly Components, Div. of Illinois Tool Works, Inc. v. United States*, 268 F.3d
1376 (Fed. Cir. 2001) .................................................................................................................. 14

*Shandong Huarong Mach. Co. v. United States*, 2005 WL 1105110, 29 CIT 484 (Ct. Int'l Trade
2005)............................................................................................................................................ 16

*Shikoku Chems. Corp. v. United States*, 795 F. Supp. 417 (Ct. Int'l Trade 1992) ...................... 16

*United Steel & Fasteners, Inc. v. United States*, 469 F. Supp. 3d 1390 (Ct. Int'l Trade 2020) 9, 10

**Statutes**

19 U.S.C. § 1516a .......................................................................................................................... 7

19 U.S.C. § 1677b ................................................................................................................ 2, 11, 12

**Other Authorities**

*Import Admin. Policy Bull. No. 04.1: Non-Market Economy Surrogate Country Selection Process* (Dep't of Commerce Mar. 1, 2004)...........................................................................7, 9

**Regulations**

19 C.F.R. § 351.408 ........................................................................................................... 7

**Administrative Determinations**

*Certain Corrosion Inhibitors from the People's Republic of China: Final Affirmative Determination of Sales at Less Than Fair Value*, 86 Fed. Reg. 7532 (Dep't of Commerce Jan. 29, 2021)................................................................................................................................ 13

*Certain Steel Racks and Parts Thereof From the People's Republic of China: Final Affirmative Determination of Sales at Less Than Fair Value*, 84 Fed. Reg. 35,595 (Dep't of Commerce July 24, 2019).................................................................................................................... 8

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE:  THE HONORABLE JENNIFER CHOE-GROVES, JUDGE**

| | | |
|---|---|---|
| JIANGSU SENMAO BAMBOO AND WOOD INDUSTRY CO., LTD., | ) ) ) | |
| Plaintiff, | ) ) | |
| and | ) ) | |
| LUMBER LIQUIDATORS SERVICES, LLC, | ) ) | |
| Plaintiff-Intervenor, | ) ) | |
| v. | ) | Court No. 22-00190 |
| UNITED STATES, | ) ) | |
| Defendant, | ) ) | |
| and | ) ) | |
| AMERICAN MANUFACTURERS OF MULTILAYERED WOOD FLOORING, | ) ) ) | |
| Defendant-Intervenor. | ) ) | |

**DEFENDANT'S RESPONSE TO COMMENTS ON REMAND RESULTS**

Defendant, the United States, respectfully submits this response to the comments submitted by plaintiff Jiangsu Senmao Bamboo and Wood Industry Co., Ltd. (Senmao) and plaintiff-intervenor Lumber Liquidators Services, LLC concerning the Department of Commerce's final results of redetermination pursuant to Court remand order filed with this Court on October 25, 2023 (ECF No. 55)  (Final Remand Results).  *See also Jiangsu Senmao Bamboo & Wood Industry Co. v. United States*, Ct. No. 22-00190, Slip Op 2023-126, 651 F. Supp. 3d 1348 (Ct. Int'l Trade August 25, 2023) (*Remand Order*).  As discussed below, Commerce's final

remand results fully comply with the Court's remand order, and plaintiff and plaintiff-intervenor have not demonstrated that the redetermination is unlawful or unsupported by substantial evidence. Accordingly, the Court should sustain the final remand results.

## **BACKGROUND**

On February 4, 2021, Commerce initiated the ninth administrative review of the antidumping duty order covering multilayered wood flooring from China, covering the period of review from December 1, 2019, through November 30, 2020. *See Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 86 Fed. Reg. 8,166, 8,169 (Dep't of Commerce Feb. 4, 2021) (P.R. 12).[1] Commerce found that it was not practicable to fully examine each of the 95 companies for which Commerce initiated an administrative review and selected Senmao as one of two mandatory respondents accounting for the largest volume of exports during the period of review. *See* Respondent Selection Memo (P.R. 112, C.R. 21). On May 3, 2021, petitioner American Manufacturers of Multilayered Wood Flooring (AMMWF) and the other mandatory respondent submitted timely withdrawals of their review requests for review of the other mandatory respondent, leaving Senmao as the sole mandatory respondent subject to the review. *See* Withdrawal of Review Requests (P.R. 146, P.R. 147).

Because Commerce considers China to be a non-market economy, as part of its non-market economy practice pursuant to 19 U.S.C. § 1677b(c), Commerce turned to the selection of a market economy country for use as a surrogate in valuing Senmao's factors of production. Commerce provided interested parties an opportunity to submit comments and information on its

---

[1] In this brief, we use "P.R." and "C.R." to refer to the public and confidential records of Commerce's original determination. We use "P.R.R." and "C.R.R." to refer to the public and confidential records of Commerce's redetermination on remand.

selection of a surrogate market economy country. *See* Request for Surrogate Country and Value Comments (P.R. 153).

On December 27, 2021, Commerce published its preliminary results. *See Multilayered Wood Flooring From the People's Republic of China*, 86 Fed. Reg. 73,252 (Dep't of Commerce Dec. 27, 2021) (P.R. 219), and the accompanying Preliminary Decision Memorandum (Dec. 20, 2021) (PDM) (P.R. 213). Commerce selected Brazil as the primary surrogate country. PDM at 17. Commerce found that Brazil and Malaysia both had generally available and public data, which were contemporaneous with the period of review, representative of broad market averages, tax- and duty-inclusive, and specific to the inputs being valued. *Id.* Commerce selected Brazil because Brazilian import data were usable for valuing all of Senmao's factors of production except for its log inputs. *Id.* Moreover, Commerce found that the surrogate financial statement of Brazilian company Duratex was preferable to the Malaysian statements on the record because Duratex is a producer of identical or comparable merchandise and (unlike the Malaysian producer, Focus Lumber) its financial statement was contemporaneous with the period of review. *Id.*

Although it selected Brazil as the primary surrogate country, Commerce preliminarily determined to value Senmao's log inputs using Malaysian data. *Id.* Commerce explained that the Malaysian data included a category specific to oak logs, as well as a basket category for non-oak logs, and was therefore more specific to Senmao's inputs than the Brazilian data, which included only a basket category. Preliminary Surrogate Value Memo (P.R. 210) at 2.

Commerce published the final results on July 1, 2022, addressing several issues raised by AMMWF and Senmao. *See Multilayered Wood Flooring from the People's Republic of China: Final Results of Antidumping Duty Administrative Review and Final Determination of No*

*Shipments; 2019-2020*, 87 Fed. Reg. 39464 (Dep't of Commerce July 1, 2022), and

accompanying Issues and Decision Memorandum (IDM) (P.R. 245), *see also* Petitioner's Case

Br. (P.R. 231) (C.R. 98), Petitioner's Rebuttal Br. (P.R. 235) (C.R. 99), Senmao's Case Br. (P.R.

228), and Senmao's Rebuttal Br. (P.R. 233). Commerce revised its selected plywood surrogate

value by removing a facially inaccurate line item of data from the Brazilian dataset of plywood

import values. IDM at 9-10. In so doing, Commerce rejected Senmao's argument that

Commerce should not revise the Brazilian surrogate value data for plywood unless they are

aberrational in the aggregate. Senmao's Rebuttal Br (P.R. 233) at 1-4, IDM at 7-9. Commerce

concluded that because the line item at issue was incorrect on its face, rather than simply being

unusually high or low, it was appropriate to exclude the line item regardless of whether it

rendered the dataset "aberrational" as compared to other import data. IDM at 7-10. Commerce

also rejected Senmao's argument that if Commerce could not use the unadjusted Brazilian data,

then Commerce must select Malaysia as the primary surrogate country. Senmao's Rebuttal Brief

at 3; IDM at 9. Commerce explained that without the incorrect data, which consisted of a single

month of imports from a single country (January 2020 imports from Spain), there was no basis to

conclude the remaining data were aberrational in the aggregate, and therefore no basis for

rejecting the Brazilian dataset altogether. IDM at 10.

    In the final results, Commerce also continued using Malaysian surrogate values for

Senmao's oak log and non-oak log inputs. *Id.* at 22-23. Commerce found that these values

represented the best available information on the record because the Malaysian dataset included

data for a Harmonized Tariff Schedule (HTS) subheading specific to oak logs, as well a distinct

catchall subheading for other logs. *Id.* The Brazilian import data for logs only included data for

the second catchall subheading, and it was not clear from the record whether Brazil was

including its oak log imports under that subheading or not. *Id.* Because Commerce found that it

was not possible to determine whether the Brazilian import data excluded or included oak logs,

Commerce declined to use the Brazilian surrogate value to value Senmao's oak or non-oak log

inputs. *Id.* To the extent that the Brazilian data excluded oak logs, Commerce found that it was

inappropriate to value Senmao's oak log inputs using non-specific import data. *Id.* Conversely,

to the extent that the Brazilian data included oak logs, valuing Senmao's non-oak inputs using

Brazilian data would run the risk of double-counting oak logs that were already valued under the

Malaysian oak log data. *Id.* Commerce disagreed with Senmao's argument that, by continuing

to use the Malaysian value to value Senmao's log inputs rather than the Brazilian value,

Commerce acted contrary to its regulatory preference to value all surrogate values in a single

surrogate country. Senmao's Case Br at 2-3, IDM at 18-20. Rather, Commerce explained that it

may resort to data from a secondary surrogate country if data from the primary surrogate country

are unavailable. IDM at 23.

  The Court remanded Commerce's decision to select Brazil as the primary surrogate

country while using Malaysian surrogate values to value Senmao's log inputs, and to adjust the

surrogate value for plywood by removing the erroneous line item from the Brazilian dataset. For

the log inputs, the Court held that Commerce's decision was not supported by substantial

evidence and was not in accordance with law because Commerce did not cite sufficient record

evidence that the Brazilian data for log inputs were highly questionable, inadequate, or

unavailable, and that by not doing so, Commerce did not provide a reasonable explanation for

departing from its practice of relying on a single surrogate country. *Remand Order*, 651 F. Supp.

3d at 1358. For the Spanish import data for plywood, the Court held "that Commerce has a

standard practice of considering whether the average unit value ('AUV') is aberrational in the

aggregate for the economically comparable surrogate countries or as compared to historical AUVs of the surrogate country at issue." *Id*. at 1360. The Court acknowledged Commerce's position that the "aberrational in the aggregate" standard did not apply to clearly incorrect data, but held that it could not conclude that Commerce's final results were supported by substantial evidence and in accordance with law because a document upon which Commerce relied, Exhibit 9 to American Manufacturers of Multilayered Wood Flooring's Surrogate Value Comments, was not placed on the record filed with the Court. *Id*.

Commerce issued draft remand results on October 3, 2023 (P.R.R. 1). In the draft results, Commerce valued all log inputs using Brazilian data. Commerce continued to exclude the erroneous line item from the Brazilian plywood data and attached Exhibit 9 for the Court's consideration. *Id*. at 4-5. Parties submitted comments on the draft remand results. (P.R.R. 6, 7, and 8). Commerce issued its final remand results on October 25, 2023 (P.R.R. 11).

After considering the parties' arguments, Commerce modified its decision by using the Malaysian oak log data to value Senmao's oak logs, although it continued to use the Brazilian data to value Senmao's non-oak logs. Final Remand Results at 6-7. Commerce found that this modification was warranted because record evidence indicated that contemporaneous data for Brazilian imports of oak wood in the rough under the HTS category 4403.91 were not available. However, consistent with its primary surrogate country preference, Commerce continued to use the Brazilian surrogate value for Senmao's non-oak logs (HTS 4403.99) because contemporaneous data under this tariff subheading were available. *Id*.

## ARGUMENT

### I. Standard of Review

"The same standard of review applies to the review of a remand determination as to the review of the original determination." *Bethlehem Steel Corp. v. United States*, 223 F. Supp. 2d

1372, 1375 (Ct. Int'l Trade 2002).  Accordingly, the "court will sustain {Commerce's} determination upon remand if it complies with the court's remand order, is supported by substantial evidence on the record, and is otherwise in accordance with law."  *Amanda Foods (Vietnam) Ltd. v. United States*, 774 F. Supp. 2d 1286, 1290 (Ct. Int'l Trade 2011) (citing 19 U.S.C. § 1516a(b)(1)(B)(i)).

**II.    Commerce Reasonably Relied On The Malaysian Surrogate Value For Oak Logs And Has Complied With The Court's Remand Order**

Senmao contends that Commerce unreasonably relied on the Malaysian surrogate value for oak logs.  Plaintiff's Comments In Opposition To Remand Redetermination (ECF No. 57) (Senmao's Comments) at 7-9.  According to Senmao, Commerce should have relied on a single surrogate country—Brazil—and should not have used data from a secondary country simply because those data were more specific.  *Id.*  However, Commerce relied on the Malaysian value for oak logs not because it was more "specific," but rather because the only available data from Brazil exclude oak logs entirely.  Accordingly, Commerce reasonably found that a Brazilian value for oak logs was unavailable and reasonably relied on Malaysian data instead.

Commerce "normally will value all factors in a single surrogate country," 19 C.F.R. § 351.408(c)(2).  However, as the Court observed in its remand order, "Commerce may use a secondary surrogate country if financial data are 'inadequate or unavailable.'"  651 F. Supp. 3d at 1356 (quoting *Import Admin. Policy Bull. No. 04.1: Non-Market Economy Surrogate Country Selection Process* (Dep't of Commerce Mar. 1, 2004) (Policy Bulletin No. 04.1)).  Here, Commerce's finding that Brazilian oak log data for the period of review is unavailable is supported by substantial evidence, and Commerce therefore followed its standard practice and complied with the remand order when it relied on oak log data from a second country.

The values on the record for log inputs from both Malaysia and Brazil all fall within subheading 4403 of the harmonized tariff schedule (HTS). But while the Malaysian data included data for both oak and non-oak subcategories of that heading, the Brazil data included only non-oak data. Specifically, for Malaysia, AMMWF provided data for two subheadings: 4403.91.1000 covering "Oak Wood In The Rough, Whether Or Not Stripped Of Bark Or Sapwood Or Roughly Squared, Not Treated: Of Oak (Quercus Spp.): Baulks, Sawlogs And Veneer Logs," and subheading 4403.99, "Nonconiferous Wood In The Rough, Nesoi,[2] Whether Or Not Stripped Of Bark Or Sapwood Or Roughly Squared, Not Treated." AMMWF's Surrogate Value Comments at Exhibits 1-2 (P.R. 180, 182).

For Brazil, Senmao provided log input data for only subheading 4403.99, covering "Nonconiferous Wood In The Rough, Nesoi, Whether Or Not Stripped Of Bark Or Sapwood Or Roughly Squared, Not Treated." Senmao's Surrogate Value Comments at Exhibits 1-2 (P.R. 177).[3] AMMWF provided additional import data for Brazil, including data for its imports under subheading 4403 from 2015 to 2020. Final Remand Results at 14. (citing AMMWF's Surrogate Value Rebuttal Comments at Exhibit 1 (P.R. 186)). These data indicate that Brazil imported

---

[2] The word "Nesoi" is used in tariff schedules to describe products "not elsewhere specified or indicated." *See, e.g., Certain Steel Racks and Parts Thereof From the People's Republic of China: Final Affirmative Determination of Sales at Less Than Fair Value*, 84 Fed. Reg. 35,595 (Dep't of Commerce July 24, 2019), and accompanying IDM at Comment 3 ("HTS number 7306.69 covers pipes, tubes, and hollow profiles of a non-circular cross section not elsewhere specified or indicated ('nesoi'). Since HTS number 7306.61 covers pipes, tubes, and hollow profiles of a square or rectangular cross section, HTS number 7306.69 is a "catch all" category for all non-circular, non-square, non-rectangular pipes and tubes.").

[3] In its surrogate value comments, Senmao includes a shortened description for HTS 4403.99 ("Other Wood, In Rough"). Senmao's Surrogate Value Comments at Exhibits 1-2 (P.R. 177). The complete six-digit description is included elsewhere on the record. *See* AMMWF's Surrogate Value Rebuttal Comments at Exhibit 1 (P.R. 186); *see also* P.R.R. 12 at Attachment III, Tab "Brazil - Master – 440399."

merchandise classified under HTS 4403.91, representing oak logs, in 2015 and 2017, which is not contemporaneous with the period of review. *Id*. However, there is no evidence that imports classified under HTS 4403.91 entered Brazil during the period of review and, thus, Commerce found that there is no contemporaneous Brazilian surrogate value on the record for oak logs.

In sum, the Brazilian data did not include contemporaneous data for oak logs, and the Malaysian data did. Accordingly, Commerce reasonably concluded that data from the surrogate country were unavailable and relied on data from a secondary country to value Senmao's oak log inputs. Final Remand Results at 14-15. This decision is consistent with Commerce's practice, supported by substantial evidence, and in compliance with the Court's remand order. *See* Policy Bulletin No. 04.1 (explaining Commerce uses a second surrogate country when data from the primary surrogate country is unavailable); *Remand Order*, 651 F. Supp. 3d at 1358 (remanding this issue because Commerce failed to support its finding that the Brazilian data was unavailable).

Senmao appears to agree that oak logs would not be included under HTS 4403.99. *See* Senmao's Comments at 8. Specifically, Senmao acknowledges that "Commerce determined that a Brazilian [surrogate value] for oak logs was not available because the Brazilian six digit heading 4403.99 covered 'Nonconiferous Wood in the Rough (Not Elsewhere Specified)' and that oak logs would have been classified under HTS 4403.91." *Id*. Rather than disputing these facts, Senmao argues that they do not support Commerce's decision to rely on data from a secondary surrogate country, because it is not enough for Commerce to find that "an alternative surrogate value in another country was more specific." *Id*. (*United Steel & Fasteners, Inc. v. United States*, 469 F. Supp. 3d 1390, 1402 (Ct. Int'l Trade 2020)).

However, Commerce did not reject available Brazilian data simply because Malaysian data was "more specific." Rather, Commerce found that the Brazilian data did not include *any* data for oak logs. Final Remand Results at 14 ("The six digit category 4403.99 is necessarily exclusive of 'Oak Wood In the Rough,' which is imported under HS subheading 4403.91, and thus, includes other types of wood."). Because Commerce found that the imports reported under HS 4403.99 were not specific to oak logs *at all*, Senmao's reliance on *United Steel & Fasteners* is misplaced. In that case, Commerce evaluated whether to rely on a six-digit tariff classification from the primary surrogate country or the more-specific ten-digit tariff classification from another country. *United Steel & Fasteners*, 469 F. Supp. 3d at 1401-03. Unlike here, there was no dispute that the six-digit tariff classification, though less specific, actually included the product being valued. Therefore, *American Fasteners* does not support Senmao's argument that Commerce is required to value Senmao's oak log inputs using a dataset that does not include oak logs at all.

III. **Commerce's Adjustment To The Brazilian Plywood Surrogate Value And Inclusion Of Exhibit 9 For The Court's Consideration Complies With The Court's Remand Order and Is Supported By Substantial Evidence and In Accordance With Law**

In this review, Commerce determined that it was appropriate to exclude a line item from Brazil's import data because it was clear from the face of the data that it was erroneous. Specifically, the data for imports of plywood from Spain in January 2020 showed the entries as having the exact same total mass in kilograms as volume in cubic meters. Preliminary Surrogate Value Memo at Attachment 1 (Sheet "Brazil – Calculated_SV_Data" at row 1886) (P.R. 211). Commerce explained that this could not be correct, citing an exhibit that AMMWF had submitted. IDM at 9-10. However, the exhibit was not part of the joint appendix submitted to the Court, and the Court explained that "[b]ecause Commerce only cited to evidence that is not on the record to support its determination and the Court cannot review the exhibit, the Court

concludes that Commerce's explanation for its adjustment of the plywood measurement figures as clearly incorrect is neither in accordance with law nor supported by substantial evidence." *Remand Order*, 651 F. Supp. 3d at 1348.

Commerce has submitted the exhibit along with its final remand results, such that its determination is now fully supported by record evidence. The exhibit demonstrates that various types of wood have densities ranging from 400 kg/m$^3$ to 1330 kg/m$^3$. Exhibit 9A to AMMWF's Surrogate Value Comments (ECF 55-1 at 23-25) (P.R. 180). The exhibit also includes an excerpt from a report on Forest Products by the Food and Agriculture Organization of the United Nations. Exhibit 9B to AMMWF's Surrogate Value Comments (ECF 55-1 at 32-33) (P.R. 180). The excerpt shows that the standard density of plywood is 650 kg/m$^3$ (with other similar wood products ranging from 420 kg/m$^3$ to 950 kg/m$^3$). Thus, for the mass of plywood in kilograms to be equal to its volume in cubic meters, it would need to be 1/650, or 0.0015% the standard density for plywood, and it would be 1/400, or 0.0025%, the density of the least dense wood listed in Exhibit 9A. Commerce reasonably concluded that this could not be correct, and that including a clearly incorrect line item would not serve Commerce's statutory mandate to value the factors of production "based on the best available information." 19 U.S.C. § 1677b(c)(1). Commerce therefore omitted the inaccurate line item, which could not possibly contribute to the accuracy of the dumping margin, from the data used in its calculations. Final Remand Results at 15-16. This determination complied with the Court's remand order and is supported by substantial evidence and in accordance with law.

Senmao argues that this determination was unlawful because it is inconsistent with Commerce's practice of removing "aberrational" data only if it is "aberrational in the aggregate." Senmao's Comments at 10-15. Senmao points out that the Court "concluded that 'Commerce

has a standard practice of considering whether the average unit value ("AUV") is aberrational in the aggregate for the economically comparable surrogate countries or as compared to historical AUVs of the surrogate country at issue.'" *Id.* (quoting *Remand Order*, 651 F. Supp 3d at 1360). However, the Court did not direct Commerce to apply that test in this case. Rather, the Court acknowledged our explanation "that Commerce did not apply the 'aberrational in the aggregate' test in this case, but rather disregarded clearly incorrect data as required by 19 U.S.C. § 1677b(c)(1) to value the factors of production based on the best available information regarding the values of such factors in order to determine the antidumping margins as accurately as possible." *Remand Order*, 651 F. Supp. 3d at 1361. The Court remanded the issue because it could not review the exhibit supporting Commerce's explanation. *Id.* Now that the exhibit is on the record, Commerce's decision to exclude the clearly erroneous line item—not because it is "aberrational" but rather because it is incorrect on its face—is fully supported by the record and should be sustained.

Senmao repeats its previous arguments as to why Commerce should be required to apply the "aberrational in the aggregate" test. Senmao's Comments at 12-15. We previously responded to these arguments. *See* Def's Response In Opposition to Plaintiff's And Plaintiff-Intervenor's Motions For Judgment Upon The Administrative Record, ECF No. 41, at 20-23; *see also* Final Remand Results at 16. As we explained, Commerce's practice of assessing whether data is aberrational in the aggregate does not apply here, where the data is incorrect on its face. That test is appropriate when a party argues that a data point is "aberrational," meaning it is unusually high or low (whether or not it is accurate) and is therefore likely to distort the average value. In such cases, the purpose of Commerce's aberrational in the aggregate practice is to "avoid the 'impossible task' of identifying and defining 'what is and what is not aberrational

among…thousands of data points'…and to discourage the cherry-picking and manipulation of data." *See*, *e.g.*, *Certain Corrosion Inhibitors from the People's Republic of China: Final Affirmative Determination of Sales at Less Than Fair Value*, 86 Fed. Reg. 7532 (Dep't of Commerce Jan. 29, 2021) and accompanying IDM at Comment 2.

In this case, Commerce was not evaluating whether the data at issue were aberrational due to non-representative data points.  Rather, Commerce found that a subset of the Brazilian plywood import data contained a patent error.  Final Remand Results at 16.  There was no need for Commerce to engage in any data comparison to reasonably conclude that the Spanish values in question were incorrect.  *Id.*  Thus, the policy of "avoid{ing} the impossible task of identifying what data is aberrational or not" was not implicated.  And by removing the erroneous line item, Commerce ensured it was not relying upon factually incorrect data when calculating Senmao's dumping margin.

Senmao further argues that Commerce cannot find a line item of data to be incorrect while also finding the dataset as a whole to be non-aberrational.  Senmao's comments at 12-15.  This argument misstates Commerce's findings.  Commerce never found that the data inclusive of the erroneous plywood values were not aberrational; rather, Commerce found that this was a moot question *after* Commerce removed the incorrect line item.  IDM at 10.  In any event, there is no inconsistency between finding the dataset not to be aberrational in the aggregate and also finding that a single line item is erroneous.  Senmao never explains why this would be the case.  Rather, its argument once again incorrectly assumes that Commerce can *only* exclude data if the dataset is aberrational in the aggregate.  But there is simply no reason, and no supporting authority, to require Commerce to include data it knows to be incorrect simply because it does not render the entire dataset aberrational.  Tellingly, Senmao does not cite any examples where

Commerce has done this in the past. This is unsurprising because, as explained above, the "aberrational in the aggregate" test is appropriate when considering whether data is "aberrational"—that is, unusually high or low, but possibly accurate—not when determining whether to exclude plainly erroneous data.

Next, Senmao argues that Commerce failed to show that removing the erroneous line item makes the dataset more accurate. Senmao's Comments at 15-16. In doing so, Senmao does not argue that the removed line of import data is correct but instead asserts that Commerce has not shown that the adjusted aggregate value is more accurate than the unadjusted value that includes the erroneous line item. *Id.* In other words, Senmao is simply making yet another variation of the argument that unless Commerce finds the whole dataset aberrational, Commerce must knowingly rely on incorrect data to calculate Senmao's margin. Again, this view lacks any supporting authority and is inconsistent with Commerce's mandate to use the "best available information" to "determine the antidumping margins 'as accurately as possible.'" *See Shakeproof Assembly Components, Div. of Illinois Tool Works, Inc. v. United States*, 268 F.3d 1376, 1382 (Fed. Cir. 2001), quoting *Lasko Metal Prods., Inc. v. United States*, 43 F.3d 1442, 1446 (Fed. Cir. 1994).

Finally, Senmao argues that the adjusted value must be distorted because it resulted in a higher plywood surrogate value and therefore a higher dumping margin. Senmao's Comments at 16. This circular logic simply assumes that the lower value was more accurate, without offering any evidence for that assumption. Further, this argument suggests that Commerce should alter its methodology to achieve a result it prefers. The Federal Circuit has explained such "'results-oriented' outcomes [are] not intended by Congress." *Nan Ya Plastics Corp. v. United States*, 810 F.3d 1333, 1345 (Fed. Cir. 2016).

For these reasons, Commerce's determination to exclude a facially erroneous line item from the dataset for Brazil's plywood imports is supported by substantial evidence, consistent with the Court's remand order, and otherwise in accordance with law.

## IV. Senmao's Arguments Concerning Its Past Rates And Past Administrative Reviews Should Not Be Considered

Senmao's comments begin by noting that Senmao has received zero, de minimis, or small margins in multiple past administrative reviews. Senmao's Comments at 4-7. Senmao also contends that Commerce "went margin shopping" and that it would not have found varying margins if it "were simply following [its] long-standing policies and practices." *Id*. at 6. Senmao further notes it has a substantial reliance interest in Commerce following its long-standing practices. *Id*. at 6-7. The Court should reject these arguments.

To the extent that Senmao is arguing that Commerce failed to follow its established methodological policies and practices, we have explained above that this is incorrect. Commerce acted consistently with its established procedures when it (1) relied on a secondary surrogate country when data from the primary surrogate country was unavailable and (2) chose to exclude plainly erroneous data without assessing whether it rendered the entire dataset aberrational in the aggregate.

To the extent that Senmao is making a separate argument that it had a reliance interest in the assessment of a low dumping margin, that argument is without merit. As an initial matter, Senmao has waived any such argument. Senmao could have made this argument following the final results of this proceeding. However, Senmao elected to wait until the remand phase to raise these arguments regarding detrimental reliance and, thus, has failed to exhaust its administrative remedies and waived these arguments before the Court. Congress has directed that "the Court of International Trade shall, where appropriate, require the exhaustion of administrative remedies."

*See* 28 U.S.C. § 2637(d).  The statute "indicates a congressional intent that, absent a strong contrary reason, the court should insist that parties exhaust their remedies before the pertinent administrative agencies."  *Boomerang Tube, LLC, TMK IP-SCO v. United States*, 856 F.3d 908, 912 (Fed. Cir. 2017) (*citing Corus Staal BV v. United States*, 502 F.3d 1370, 1379 (Fed. Cir. 2007)).  Here, Senmao did not exhaust its administrative remedies by raising its reliance arguments before Commerce.  Moreover, Senmao waived any arguments regarding this issue by failing to raise it in its opening brief before the Court.  *See*, *e.g.*, *Novosteel SA v. United States*, 284 F.3d 1261, 1274 (Fed. Cir. 2002) (deeming argument waived where not presented in opening brief filed with the Court of International Trade).  Therefore, the Court should not consider this argument for the first time at this late point in the litigation.

In any event, each segment of a proceeding is independent and stands on its own record.  *See Peer Bearing Co. v. United States*, 587 F. Supp. 2d 1319, 1325 (Ct. Int'l Trade 2008) (citing *Shandong Huarong Mach. Co. v. United States*, 2005 WL 1105110, 29 CIT 484, 491 (Ct. Int'l Trade 2005)).  Indeed, "each administrative review is a separate exercise of Commerce's authority that allows for different conclusions based on different facts in the record."  *Jiaxing Brother Fastener Co. v. United States*, 822 F.3d 1289, 1299 (Fed. Cir. 2016) (citation omitted).  As such, past administrative reviews and the resulting dumping margins are irrelevant to the scope of this Court's review here: whether the current remand results, based upon this record, is lawful and supported by substantial evidence.

To support its contrary argument, Senmao relies primarily on this Court's holding in *Shikoku Chems. Corp. v. United States*, 795 F. Supp. 417 (Ct. Int'l Trade 1992).  In *Shikoku*, this Court held that the plaintiff had a reliance interest in Commerce's practice spanning multiple reviews to permit Shikoku to adjust home market sales to reflect charged paid to a subcontractor

for repacking. *Id.* Unlike in *Shikoku*, Commerce did not apply a new methodology in this review—rather, Commerce followed its established practice by selecting the best available information on the record for valuing Senmao's factors of production. Additionally, Senmao cites no evidence in support of its claim that it "relied" on Commerce's past findings. *See Fischer S.A. Comercio, Industria & Agricultura v. United States*, No. 12-00340, 2014 WL 2853909, at *8 (Ct. Int'l Trade May 27, 2014) ("Moreover, Fischer offers no evidence in support of its reliance argument other than its bare assertion that it relied on Commerce's past methodologies."); *see also Corinth Pipeworks Pipe Indus. SA v. United States*, 633 F. Supp. 3d 1314, 1322 (Ct. Int'l Trade 2023) (rejecting respondent's reliance upon *Shikoku* as basis to challenge Commerce's change in methodology). Further, Senmao has already argued detrimental reliance with respect to Commerce's denial of its byproduct offset, and the Court rejected that argument because Commerce's determination (like those at issue here) complied with Commerce's legal obligations. *Remand Order*, 651 F. Supp. 3d at 1368. Therefore, this Court should reject Senmao's arguments regarding its alleged reliance interests.

## CONCLUSION

For these reasons, we respectfully request that the Court sustain Commerce's remand results and enter judgment in favor of the United States.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICA M. McCARTHY
Director

/s/ Tara K. Hogan
TARA K. HOGAN
Assistant Director

OF COUNSEL:                                          /s/ Kelly M. Geddes
CHRISTOPHER KIMURA                         KELLY M. GEDDES
Attorney                                                    Trial Attorney
Office of the Chief Counsel                     Commercial Litigation Branch
   for Trade Enforcement and Compliance     Civil Division
U.S. Department of Commerce              Department of Justice
Washington, D.C.                                     P.O. Box 480
Telephone:  (202) 482-0131                   Ben Franklin Station
                                                              Washington, D.C.  20044
                                                              Telephone: (202) 307-2867
                                                              Email: kelly.geddes2@usdoj.gov

Dated January 8, 2024                            *Attorneys for Defendant*

**CERTIFICATE OF COMPLIANCE**

Defendant's counsel certifies that this brief complies with the Court's type-volume limitation rules.  According to the word count calculated by the Microsoft Word processing system used to prepare this brief, I certify that this brief contains 5,068 words.


/s/ Kelly M. Geddes

January 8, 2024