A-570-970
Remand
Slip Op. 24-47
POR: 12/1/2019 – 11/30/2020
**Public Document**
E&C/OVIII: Team

***Jiangsu Senmao Bamboo and Wood Industry Co., Ltd., et al v. United States*,**
**Court No. 22-190, Slip Op. 24-47 (CIT April 19, 2024)**
**Multilayered Wood Flooring from the People's Republic of China**

**FINAL RESULTS OF REDETERMINATION PURSUANT TO COURT REMAND**

## I.    SUMMARY

The U.S. Department of Commerce (Commerce) has prepared these final results of redetermination pursuant to the United States Court of International Trade's (the Court) remand order in *Jiangsu Senmao Bamboo and Wood Industry Co., Ltd., et al v. United States*, Court No. 22-00190, Slip Op. 24-47 (April 19, 2024) (*Remand Order*). The Court's *Remand Order* concerns the final results of the 2019-2020 administrative review of the antidumping duty (AD) order on multilayered wood flooring from the People's Republic of China,[1] as well as *Jiangsu Senmao Bamboo and Wood Industry Co., Ltd., et al v. United States*, Court No. 22-00190, Slip Op. 23-126 (CIT August 25, 2023) (*Senmao I*) and the subsequent remand redetermination.[2]

On August 25, 2023, the Court issued its decision in *Senmao I* remanding Commerce's *Final Results* and directing Commerce to: (1) further explain or reconsider the use of Malaysian surrogate value (SV) data for oak and non-oak log inputs; and (2) further explain or reconsider

---

[1] *See Multilayered Wood Flooring from the People's Republic of China: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2019-2020*, 87 FR 39464 (July 1, 2022) (*Final Results*), and accompanying Issues and Decision Memorandum (IDM); *see also Multilayered Wood Flooring from the People's Republic of China: Amended Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order*, 76 FR 76690 (December 8, 2011).

[2] *See Final Results of Redetermination Pursuant to Remand Order, Jiangsu Senmao Bamboo and Wood Industry Co., Ltd. et al v. United States*, Court No. 22-00190, Slip Op. 23-126, dated August 25, 2023 (*Senmao I Final Remand*), available at https://access.trade.gov/resources/remands/23-126.pdf.

the revision made to the Brazilian SV data for plywood.[3]  In the *Senmao I Final Remand*, we reconsidered the SVs used for oak and non-oak log inputs and recalculated Jiangsu Senmao Bamboo and Wood Industry Co., Ltd.'s (Senmao) margin using SV data from the primary surrogate country, Brazil, for non-oak logs but continued to use the Malaysian SV for oak logs.[4] We also submitted Exhibit 9 of the American Manufacturers of Multilayered Wood Flooring's (the petitioner) SV Comments[5] to the Court, upon which we based our determination in the *Final Results* to adjust the Brazilian plywood dataset by removing the Spanish import data.

In the subsequent *Remand Order*, the Court once again remanded the *Final Results* to Commerce.  The Court held that Commerce had not cited substantial evidence that the SV data for both Brazil and Malaysia were publicly available, contemporaneous with the December 1, 2019, through November 30, 2020, period of review (POR), representative of broad market averages, tax- and duty-exclusive, and specific to the inputs being valued.  The Court did not reach the issue of Commerce's selection of the oak and non-oak log SV data.  Regarding the Brazilian plywood adjustment, the Court found that "Commerce failed to explain how Exhibit 9 demonstrates that a quantity of plywood expressed in $m^3$ cannot be the same as the quantity expressed in kg{,}" and that "Commerce did not provide a reasonable explanation for how its removal of the Spanish import data led to a more accurate dataset, and Commerce did not establish how removing the Spanish import data would result in the best available information{.}"[6]  To comply with the *Remand Order,* we provided citations to the record evidence relied upon in determining that both the Brazilian and Malaysian SV data were publicly available, contemporaneous with the POR, representative of a broad market average, tax and

---

[3] *See Senmao I.*
[4] *See Senmao I Final Remand* at 7-8.
[5] *See* Petitioner's Letter, "Surrogate Value Comments," dated July 29, 2021 (Petitioner SV Comments).
[6] *See Remand Order* at 19-20.

duty-exclusive, and specific to the inputs being valued.  We also explained how Exhibit 9

demonstrates that the line item for Spanish plywood imports in the SV dataset is erroneous.

## II.     REMANDED ISSUES

### A.  The Surrogate Value for Logs

**Background**

Senmao reported that it used seven species of logs and argued that Commerce should

value them using Brazilian Harmonized System (HS) subheading 4403.99, *i.e.*, "Nonconiferous

Wood In The Rough, Nesoi, Whether Or Not Stripped Of Bark Or Sapwood Or Roughly

Squared, Not Treated."[7]  For the *Final Results*, Commerce selected Brazil as the primary

surrogate country while relying on Malaysian import data as SVs for Senmao's "European oak"

and "red oak" logs using HS subheading 4403.91.1000, *i.e.*, "Oak Wood In The Rough, Whether

Or Not Stripped Of Bark Or Sapwood Or Roughly Squared, Not Treated:  Of Oak (Quercus

Spp.):  Baulks, Sawlogs And Veneer Logs" ("Oak Wood In The Rough").  We valued Senmao's

non-oak logs (acacia, hickory, walnut, maple, and poplar) with Malaysian HS basket category

4403.99.00, *i.e.*, "Other Wood, In Rough."  Although we valued the remainder of Senmao's

reported factors of production (FOP) using Brazilian SVs,[8] we made an exception for logs

because the Malaysian data differentiated oak logs from other species, whereas the Brazilian data

were a general basket category.  We stated that "{w}e are not disregarding Brazilian data simply

because these data are less specific to Senmao's logs, but rather because we cannot conclude on

this record that they are specific at all with respect to Senmao's oak logs."[9]  Further, because

---

[7] *See* Senmao's Letters, "Sections C and D Questionnaire Response," dated April 29, 2021 (Senmao CDQR), at Exhibit D-3; and "Surrogate Value Comments," dated July 29, 2021 (Senmao SV Comments), at Exhibit 1.
[8] *See Multilayered Wood Flooring from the People's Republic of China:  Preliminary Results of Antidumping Duty Administrative Review, Preliminary Determination of No Shipments, and Rescission of Review, in Part; 2019-2020*, 86 FR 73252 (December 27, 2021) (*Preliminary Results*), and accompanying Memorandum, "Surrogate Values for the Preliminary Determination," dated December 17, 2021 (Preliminary SV Memorandum).
[9] *See Final Results* IDM at Comment 5.

there was no information on the record regarding the mix of wood species in the Brazilian HS basket category 4403.99, we declined to use it for Senmao's non-oak logs to avoid the possibility of double counting oak logs, which we separately valued with an SV specific to oak logs (*i.e.*, Malaysian HS category 4403.91.0000). Thus, we valued the other species of logs using the Malaysian HS 4403.99.00, *i.e.*, "Other Wood, In Rough." Although, in the *Final Results*, Commerce found that the Malaysian SV data were more specific to two of Senmao's log inputs,[10] we did not determine that the Brazilian SV data were either highly questionable, inadequate, or unavailable.

Pursuant to the Court's first remand order in *Senmao I*, Commerce reexamined the record and determined that the Brazilian SV data for non-oak logs was not highly questionable, inadequate, or otherwise unavailable to calculate Senmao's FOPs.[11] However, record evidence showed that Brazil had previously imported oak logs classified under HS subheading 4403.91 between 2015 and 2017, prior to the POR.[12] Because we were able to confirm that imports classified under HS subheading 4403.91 were previously imported into Brazil, a sufficient basis in the record exits to show that the Brazilian oak log data for use in valuing Senmao's oak log inputs, *i.e.*, HS subheading 4403.91, are unavailable for the POR.[13]

Thus, in compliance with the Court's remand order in *Senmao I*, we valued Senmao's non-oak log inputs using the Brazilian HS 4403.99, *i.e.*, using data from the primary surrogate country, and continued to value Senmao's oak log inputs using Malaysian HS subheading

---

[10] *See* Petitioner's Letter, "Additional Surrogate Value Information," dated November 8, 2021 (Petitioner's Additional SV Comments); *see also Preliminary Results*; and Preliminary SV Memorandum.
[11] *See Senmao I Final Remand* at 13-14; *see also* Senmao SV Comments at Exhibit 2.
[12] *See* Petitioner's Letter, "Rebuttal Surrogate Value Information," dated August 3, 2021 (Petitioner Rebuttal SV), at Exhibit 1 (Historical Brazilian import data).
[13] *See Senmao I Final Remand* at 13-15.

4403.91, because the Brazilian data for oak logs were unavailable for this POR. This approach is consistent with Commerce's normal practice.[14]

**Analysis**

Section 773(c)(1) of the Tariff Act of 1930, as amended (the Act), instructs Commerce to value the factors of production (FOPs) based upon the best available information from a market economy country or countries that Commerce considers appropriate. When evaluating SV data, Commerce considers several factors including whether the data are publicly available, contemporaneous with the POR, representative of a broad market average, tax- and duty-exclusive, and specific to the inputs used to produce the subject merchandise.[15] There is no hierarchy among these criteria, and it is Commerce's practice to carefully consider the available evidence in light of the particular facts of each industry when undertaking its analysis.[16] However, Commerce's preference is to satisfy the breadth of these aforementioned selection factors,[17] and to value all FOPs in the primary surrogate country.[18]

Per the *Remand Order*, we have provided the Court with a more detailed discussion of evidence relating to Commerce's criteria that led Commerce to the conclusion that Brazil and Malaysia fulfilled the surrogate country criteria and to select Brazil as the primary surrogate country and have not made further changes for the purposes of this final redetermination. In the

---

[14] *See, e.g.*, *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules, from the People's Republic of China: Final Determination of Sales at Less Than Fair Value, and Affirmative Final Determination of Critical Circumstances, in Part*, 77 FR 63791 (October 17, 2012) (*Solar Cells from China*), and accompanying IDM at Comment 13; and *Xanthan Gum from the People's Republic of China: Final Determination of Sales at Less Than Fair Value*, 78 FR 33350 (June 4, 2013), and accompanying IDM at Comment 2.
[15] *See, e.g.*, *Certain Frozen Fish Fillets from the Socialist Republic of Vietnam: Final Results of Antidumping Duty Administrative Review and New Shipper Reviews; 2010-2011*, 78 FR 17350 (March 21, 2013), and accompanying IDM at Comment I(C).
[16] *See, e.g.*, *Certain Steel Threaded Rod from the People's Republic of China: Final Results of Third Antidumping Duty Administrative Review; 2011-2012*, 78 FR 66330 (November 5, 2013), and accompanying IDM at 7.
[17] *Id.*
[18] *See, e.g.*, *Solar Cells from China* IDM at Comment 9.

underlying administrative review, interested parties submitted on the record Malaysian and Brazilian SV data that fulfill the above-mentioned criteria for determining which countries are sufficient to be considered primary surrogate countries.[19]  Specifically, the Malaysian SV data provided, by the petitioner, and the Brazilian data, submitted by Senmao, are publicly available and include sources such as the Global Trade Atlas (GTA),[20] the World Bank's *Doing Business* reports, and Brazilian and Malaysian government and agency websites.[21]  In other words, parties submitted the SV data concerning Brazil and Malaysia which were derived from sources that are publicly available.  The Malaysian and Brazilian SV data are contemporaneous with the POR, as seen in the dates listed across the exhibits provided by Senmao and the petitioner in their respective SV comments.[22]  The Malaysian and Brazilian SV data are also representative of broad market averages and are tax- and duty-exclusive.  Specifically, the GTA SV data represent broad market averages because they encompass the average prices for inputs imported into Brazil and Malaysia during the POR.[23]  Further, GTA data have previously been found to be tax and duty-exclusive,[24] and no parties have argued otherwise.[25]  Lastly, the Malaysian and

---

[19] *See* Petitioner's Letter, "Comments on Surrogate Country Selection," dated July 15, 2021 (Petitioner SC Comments); *see also* Senmao's Letter, "Surrogate Country Comments," dated July 15, 2021 (Senmao SC Comments); Petitioner SV Comments; Senmao SV Comments at Exhibit 2; Petitioner's Additional SV Comments; and Senmao's Letter, "Surrogate Value Rebuttal Comments," dated August 3, 2020 (Senmao SV Rebuttal Comments).

[20] *See, e.g.*, *Certain Frozen Fish Fillets from the Socialist Republic of Vietnam:  Final Results of Antidumping Duty Administrative Review; 2012-2013*, 80 FR 2394 (January 16, 2015) (*Fish Fillets*), and accompanying IDM at Comment 5 (noting that Commerce has previously found GTA data to be publicly available, representative of broad market averages, and free of duties and taxes); *see also NTSF Seafoods Joint Stock Co. v. United States*, 538 F. Supp. 3d 1356, 1362-63 (CIT 2021) (upholding Commerce's use of GTA data).

[21] *See* Petitioner SV Comments at Exhibits 1-10; *see also* Senmao SV Comments at Exhibits 1-13.

[22] *Id.*

[23] *See* Senmao SV Comments at Exhibit 2 (which include evidence of FOPs from market economy countries being included and FOPs from non-market economy countries being excluded); *see also* Petitioner SV Comments at Exhibit 2 (consisting of raw GTA data).

[24] *See Fish Fillets* IDM at Comment 5.

[25] *See* Senmao SV Comments at Exhibit 13 (PDF page 372, incorporating a chart called "Reconciliation of income tax expenses and social contributions"); *see also* Petitioner SV Comments at Exhibit 10A (which show the annual report of Focus Lumber, including profit before and after tax); *generally* Senmao's Administrative Case Brief; Senmao's Letter, "Rebuttal Brief," dated February 17, 2022; Petitioner's Letter, "Case Brief," dated February 7, 2022; and Petitioner's Administrative Rebuttal Brief.

Brazilian SV data are specific to the inputs being valued as both data sets include raw GTA data for Brazilian and Malaysian HS Codes covering the vast majority of inputs used in the production of the subject merchandise.[26]

With respect to the surrogate financial statements, we determined that the financial statements of the Brazilian company Duratex S.A. (Duratex) are preferable to the other Brazilian company's and Malaysian company's financial statements because: (1) Duratex is a producer of identical or comparable merchandise, *i.e.*, laminate flooring; (2) unlike the Malaysian company's financial statements, Duratex's financial statements are contemporaneous with the POR; and (3) while Brazilian company Eucatex S/A Industry and Commerce and Subsidiaries' (Eucatex) financial statements are contemporaneous with the POR and also include values for laminate flooring, its financial statements are less reliable because they were given a qualified opinion by its auditors.[27] Specifically, the audit reports a "lack of appropriate supporting documentation to demonstrate ownership of the creditor and consequently adequate accounting, calculation, and disclosure of the referred debt."[28]

Accordingly, we continue to find that both Brazil and Malaysia are suitable primary surrogate countries because they fulfill the above-mentioned criteria and the record contains usable data for valuing the vast majority of Senmao's FOPs.[29] However, we are continuing to

---

[26] *See* Senmao SV Comments at Exhibit 9 (which include data concerning the inputs used in the production of subject merchandise, *e.g.*, 44039900 (Other Wood, In Rough)); *see also* Petitioner SV Comments at Exhibit 2.
[27] *See Wood Mouldings and Millwork Products from the People's Republic of China: Preliminary Affirmative Determination of Sales at Less Than Fair Value, Postponement of Final Determination, and Extension of Provisional Measures*, 85 FR 48669 (August 12, 2020), and accompanying Preliminary Decision Memorandum (PDM) (determining that Eucatex's 2019 financial statements were unreliable because of a qualified opinion by its auditors), unchanged in *Wood Mouldings and Millwork Products from the People's Republic of China: Final Affirmative Determination of Sales at Less Than Fair Value*, 86 FR 63 (January 4, 2021), and accompanying IDM.
[28] *See* Senmao SV Comments at Exhibit 13 (PDF pages 299-306 under section entitled "INDEPENDENT AUDITOR'S REPORT ON INDIVIDUAL AND CONSOLIDATED FINANCIAL STATEMENTS").
[29] *See* Preliminary SV Memorandum; *see also* Memorandum, "Request for Economic Development, Surrogate Country and Surrogate Value Comments and Information," dated July 1, 2021; Petitioner SC Comments; Senmao SC Comments; Petitioner SV Comments; Senmao SV Comments at Exhibit 2; and Senmao SV Rebuttal Comments.

select Brazil as the primary surrogate country based on the quality of data because the Brazilian

financial statement on the record is preferable to the Malaysian financial statement for the

purpose of the financial ratios used in the normal value calculation.

### B. Surrogate Value for Plywood

**Background**

In the *Final Results*, Commerce adjusted the composite Brazilian SV for plywood by

removing the Spanish import data for January 2020 from the average unit value because this

single line of data (Spanish data) was erroneous.[30]  The January 2020 import data used for the

purpose of calculating the SV for plywood reported quantities for imports from Spain under HS

subheading 4412.33 in both cubic meters (m$^3$) and kilograms (kg).  However, the quantity of

plywood expressed in m$^3$ was the same as the quantity expressed in kg, which is in error because

the former measures volume and the latter measures weight.[31]

**Analysis**

Commerce made its determination that the Spanish import plywood values were

erroneous based on the Petitioner SV Comments at Exhibit 9, which contains information on the

density of wood species expressed in m$^3$ and kg.[32]  As explained previously, Exhibit 9A shows

the density of various wood species, including birch, elm, and oak, from the website Engineering

ToolBox, as well as standard conversion factors of wooden products from the Food and

Agriculture Organization of the United Nations that is located immediately below the density

table.  The equation for density for the Spanish import data, as indicated in the right-side column

of Exhibit 9A, is kg/m$^3$.  If both m$^3$ and kg are equal values, it would result in a density of one,

---

[30] *See Final Results* IDM at Comment 2.
[31] *See Final Results* IDM at Comment 2; *see also* Petitioner SV Comments at Exhibit 9.
[32] *Id.*

which is erroneous considering the values in the log density table spanning the entirety of Exhibit 9A all range in the hundreds.  Additionally, in Exhibit 9B, the chart at the bottom of page 36 titled Weight and Volume includes comparisons of kg/m$^3$ and m$^3$/ton for various FOPs, one of which is plywood with a density value of 650, demonstrating that m$^3$ and kg are discrete units that cannot be of equal value especially when calculating plywood density.[33]  Accordingly, the equation for density for Spanish imports, as indicated in the right-side column of Exhibit 9A, is kg/m$^3$ and the value for Spanish imports is the same regardless of whether it is expressed on a kg or m$^3$ basis.  This flaw only affects a single line Spanish data in the entire dataset, which calls into question the reliability of the value in this specific line of data.

We find that removing this erroneous value, which is limited to a single line for a single month and does not affect data from any country except Spain, results in a more reliable and accurate dataset.  The U.S. Court of Appeals for the Federal Circuit (Federal Circuit) has defined "accuracy" in the context of Commerce's determinations as "correct as a mathematical and factual matter, thus supported by substantial evidence."[34]  In addition, "the statute affords administrative discretion to examine various data sources for determining the best available information."[35]  As explained above, Exhibit 9A and 9B demonstrate that values in m$^3$ and kg cannot be the same, as they are used to calculate density, and log densities are expected to range in the hundreds and not simply a value of one.  Thus, the line item is mathematically and factually incorrect, and if Commerce were to calculate Senmao's margin using this line item without justifiable reason to do so, the results would not be accurate.  Significantly, this isolated

---

[33] *Id.* at Exhibit 9B.

[34] *See Nan Ya Plastics Corp. v. United States*, 810 F.3d 1333, 1344 (Fed. Cir. 2016).

[35] *See Heze Huayi Chemical Co. v. United States*, No. 17-00032, Slip Op. 18-57 (CIT 2018), at 4 (citing *National Ford Chem Co. v. United States*, 166 F.3d 1373, 1377 (Fed. Cir. 1999) ("While {773(c)} provides guidelines to assist Commerce in this process, this section also accords Commerce wide discretion in the valuation of factors of production in the application of those guidelines.")).

flaw is limited to Spanish data pertaining to a single month and does not affect the remainder of the dataset, which includes data from multiple countries. We also find that this dataset remains the best available information because it originates from the primary surrogate country of Brazil, the flaw in the data is limited to a very small and isolated subset of data and can be easily corrected through a simple adjustment, and we find no reason from either our own review of the data or from interested party comments to divert from the practice to rely on primary surrogate country data when possible.

## III.     COMMENTS ON FINAL RESULTS OF REDETERMINATION

We released our draft remand redetermination on Thursday, May 23, 2024. We invited interested parties to comment on these final results of redetermination. We received timely comments on the draft results of redetermination from Senmao and Lumber Liquidators.[36]

**Comment 1: The Selection of the Primary Surrogate Country**

**Senmao's Comments**

The following is a verbatim summary of the arguments submitted by Senmao. For further details, *see* Senmao's Remand Comments at 4-9.

- {Commerce} incorrectly claims {in the draft redetermination} that no party challenged the selection of Brazil as the primary surrogate country in the underlying administrative review. Senmao argued in its rebuttal brief in the underlying administrative review that if {Commerce} was going to use Malaysian data for logs and adjust the Brazilian data for plywood then it should select Malaysia as the primary surrogate country.

---

[36] *See* Senmao's Letter, "Comments on Draft Remand Redetermination," dated May 31, 2024 (Senmao's Remand Comments); s*ee also* Lumber Liquidator's Letter, "Letter in Lieu of Brief," dated February 7, 2022, in which it agrees with, and incorporates by reference, the comments in opposition made by Senmao.

- {Commerce}'s Draft Second Remand Results still does not establish that Brazil is the appropriate primary surrogate country. The record evidence cannot establish that the Brazilian data for logs was specific to Senmao's inputs because {Commerce} has refused to use Brazilian data to value Senmao's oak logs. The record evidence cited by {Commerce} cannot be used to assert that the Brazilian data for plywood represents a broad market average because {Commerce} has insisted on adjusting the plywood data to remove import data from Spain.

- {Commerce} has violated its regulations and its well-established practice by mixing and matching surrogate values from different countries despite the fact that all FOPs could have been valued by using surrogate values from a single surrogate country. In this case, Brazil cannot be said to have the best factors data if there is no data to value oak logs and the plywood data needs to be adjusted. Logs and plywood are the two major inputs in the production of wood flooring. The decision to mix and match data from multiple surrogate countries should not be taken lightly, as {Commerce} had done here. Even accepting that the Brazilian financial statement was preferable to the Malaysian financial statement, there has been no claim of finding that the Malaysian financial statement was unreliable. Ultimately, {Commerce} fails to explain why the allegedly superior financial statements from Brazil outweighed the allegedly superior surrogates for major inputs from Malaysia in its selection of the primary surrogate country.

**Lumber Liquidator's Comments**

Lumber Liquidator agrees with and incorporates comments made by Senmao.

**Commerce's Position:**

We disagree with Senmao that Commerce should select Malaysia as the primary surrogate country because we used Malaysian SV data to value Senmao's oak log inputs and adjusted the Brazilian plywood SV data to remove an erroneous data entry. Additionally, because Brazil meets our criteria for the primary surrogate country selection and has complete, contemporaneous, and otherwise viable SV data, including contemporaneous financial statements (whereas Malaysian data on the record lacks contemporaneous financial statements), we continue to use Brazil as the primary surrogate country.

As previously explained, if more than one potential surrogate country satisfies the statutory requirements for selection as a surrogate country, Commerce selects the primary surrogate country based on data availability and reliability.[37] When selecting the best available information for valuing FOPs, in accordance with section 773(c)(1) of the Act, it is Commerce's practice to select SVs which, to the extent practicable, are product-specific, representative of a broad-market average, publicly available, contemporaneous with the POR, and exclusive of taxes and duties.[38] Moreover, it is Commerce's well-established practice to rely upon the primary surrogate country for all SVs, whenever possible, and to only resort to a secondary surrogate country if data from the primary surrogate country are unavailable or unreliable, as noted by the Court in *Senmao I*.

---

[37] *See* Import Administration Policy Bulletin No. 04.1: Non-Market Economy Surrogate Country Selection Process (March 1, 2004) (Policy Bulletin 04.1).

[38] *See*, *e.g.*, *Fuwei Films (Shandong) Co. v. United States*, 837 F. Supp. 2d 1347, 1350-51 (CIT 2012) (*Fuwei Films*) (citing *Certain Pneumatic Off-the-Road Tires from the People's Republic of China: Final Affirmative Determination of Sales at Less Than Fair Value and Partial Affirmative Determination of Critical Circumstances*, 73 FR 40485 (July 15, 2008), and accompanying IDM at Comment 10; *Electrolytic Manganese Dioxide from the People's Republic of China: Final Determination of Sales at Less Than Fair Value*, 73 FR 48195 (August 18, 2008), and accompanying IDM at Comment 2).

As an initial matter, Senmao is correct that in its rebuttal brief when commenting on the *Preliminary Results* it argued that if Commerce were to use the Malaysian SV data for logs and adjust the plywood SV, it should select Malaysia as the primary surrogate country.[39]  However, we disagree with Senmao that it did not have an opportunity to fully consider and brief the appropriate surrogate country issue in the underlying proceeding.[40]  Prior to the *Preliminary Results*, interested parties submitted pre-preliminary comments that Commerce should value Senmao's log inputs and plywood inputs using Malaysian SVs while also using the Brazilian financial statement.[41]  As Senmao has recognized in its administrative briefing, it was aware that Commerce has a practice to normally value all FOPs using a single primary surrogate country but that if the data sets on comparison are not fairly equal, *i.e.*, data is unavailable or inadequate, Commerce may look outside of the primary surrogate country.[42]  Once the argument was raised that Commerce should consider using SVs from different surrogate countries, Senmao had the opportunity to argue about the validity of the surrogate country data and whether Commerce was precluded from valuing Senmao's inputs using SVs from an alternative surrogate country.

With respect to the log inputs, as noted above, pursuant to section 773(c)(1)(B) of the Act, to determine the best available information to value the input in question, Commerce's long established practice is to value the input with an SV that is specific to the input in question.[43]  However, as the Court found in *Senmao I*, Commerce may only use SVs outside of the primary surrogate country when its data is either unavailable or inadequate.  In adhering to the Court's holding, Commerce reconsidered how it valued Senmao's log inputs and ultimately found that

---

[39] *See* Senmao's Rebuttal Brief at 3.
[40] *See* Senmao's Remand Comments at 4-5.
[41] *See* Petitioner's Letter, "Pre-Preliminary Determination Comments," dated November 19, 2021.
[42] *See* Senmao's Letter, "Case Brief," dated February 7, 2022, at 2.
[43] *See*, *e.g.*, *Certain Helical Spring Lock Washers from the People's Republic of China:  Final Results of Antidumping Duty Administrative Review*, 75 FR 29720 (May 27, 2010), and accompanying IDM at Comment 3.

the Brazilian SV for oak logs was unavailable based on Brazil's historical import data.[44]  On the other hand, Commerce reversed course and found the Brazilian SV for non-oak logs was available.  Thus, Commerce is now valuing Senmao's oak logs using Malaysia and non-oak logs using Brazil.

While Senmao reported oak and non-oak logs used to produce the subject merchandise, the record contains only two SVs specific to Senmao's log inputs.[45]  We relied on the description of Senmao's inputs, "European oak" and "red oak," to determine that the best available information to value these two inputs was the Malaysian HS 4403.91.1000:  "Oak Wood In The Rough" which is the most specific HS description among the log SVs to value Senmao's oak log inputs.[46]  The Court has held that Commerce may rely on the plain language of HS descriptions to determine the best available information to value a specific input.[47]  Here, based on the HS description, Malaysian HS 4403.91.1000:  "Oak Wood In The Rough" is most specific to Senmao's oak wood inputs.

With respect to Senmao's remaining log inputs (*i.e.*, non-oak logs), the record does not contain SVs specific to these remaining log types.  The record contains the Malaysian HS basket category 4403.99.00:  "Other Wood, In Rough" and Brazilian HS 4403.99:  "Nonconiferous Wood In The Rough, Nesoi, Whether Or Not Stripped Of Bark Or Sapwood Or Roughly Squared, Not Treated."  Because neither of these HS subheadings are specific to the remaining log types used by Senmao, and because we continue to determine that Brazil is the appropriate primary surrogate country in this administrative review and do not otherwise find the Brazilian

---

[44] *See* Petitioner Rebuttal SV at Exhibit 1 (Historical Brazilian import data).
[45] *See* Petitioner SV Comments at Exhibit 2; *see also* Senmao CDQR at 13-14 and Exhibit D-5.
[46] *See* Preliminary SV Memorandum.
[47] *See Mid Continent Steel & Wire, Inc. v. United States*, 321 F.Supp. 3d 1313, 1325 (CIT 2018) (sustaining use of an SV based on the HS description that best matched the description provided by the respondent).

SVs for these inputs to be unavailable, inadequate, or unreliable, we used the Brazilian

subheading HS 4403.99:  "Wood In The Rough" to value the remaining log types reported by

Senmao in the *Senmao I Final Remand*.

Senmao contends that, if Commerce continues to use the Malaysian SV for oak logs and

adjust the plywood data, Brazil cannot be an appropriate primary surrogate country because it no

longer has the best factors data and thus Commerce must switch to Malaysia.[48]  Senmao further

argues that in cases where there were issues with the SVs for a major input in a potential

surrogate country, Commerce has not mixed and matched data and instead used a different

surrogate country.[49]  We disagree with Senmao's broad generalization that using one Malaysian

SV which is specific to two of the seven log inputs used by Senmao, and that making a narrowly

tailored adjustment to remove a single line of data in the Brazilian plywood SV, renders the

entirety of the Brazilian SV dataset unusable such that Commerce must switch the primary

surrogate country to Malaysia.

Because Commerce has determined the Brazilian SV for oak logs to be unavailable, the

record only contains usable data from Malaysia for one species of log that make up Senmao's

two oak log inputs:  Malaysian HS 4403.91.1000:  "Oak Wood In The Rough."  The Brazilian

HS basket category is left to value the remaining five species of logs used to produce the veneers

in Senmao's production process.  Other than simply claiming logs constitute a major input,

Senmao points to no record evidence demonstrating that valuing oak logs with the Malaysian SV

creates distortions warranting the selection of Malaysia as the primary surrogate country.

---

[48] *See* Senmao's Rebuttal Brief at 6.
[49] *Id.* (citing *Chlorinated Isocyanurates from the People's Republic of China:  Preliminary Results of Antidumping Duty Administrative Review; 2015-2016*, 82 FR 35183 (July 28, 2017) (*China ChlorIsos Prelim 15-16*), and accompanying PDM and *Certain Frozen Warmwater Shrimp from the Socialist Republic of Vietnam:  Preliminary Results of Antidumping Duty Administrative Review; 2013-2014*, 80 FR 12441 (March 9, 2015), and accompanying PDM).

With respect to plywood, even after adjusting the Brazilian data to remove the erroneous January Spanish import data, the Brazilian SV for plywood continues to represent a robust dataset from which to derive an SV for Senmao's plywood input, as it represents a broad market average comprised of imports from numerous countries:  Argentina, Belgium, Hong Kong, Latvia, Netherlands, Paraguay, Russia, Spain, and the United States.  Senmao contends that removing a single line of data that was clearly erroneous renders the entire Brazilian plywood SV unreliable because the data now "represents only a subset of the Brazilian market and cannot be characterized as a broad market average."[50]  First, Senmao misunderstands how the term "broad market average" applies to Commerce's SV selection criteria.  When considering whether a potential SV meets the broad market average criteria, Commerce considers whether the SV represents multiple actual purchase prices or whether the price is available across a broad swath of the potential surrogate country.[51]  Here, not only is the Brazilian SV for plywood derived from nine different countries (excluding the January Spanish import data), Senmao has provided no information which demonstrates that the prices used to derive the Brazilian plywood SV are not broadly available across the Brazilian market.  Further, Senmao has pointed to no information on the record which demonstrates that imports under the Brazilian plywood HS 4412.33.0000 are not plywood, or provided any other information that would lead Commerce to conclude that Brazilian HS 4412.33.0000 is unreliable as an SV source for Senmao's plywood input. Moreover, Commerce acted within its practice to adjust erroneous data within the SV, thereby

---

[50] *See* Senmao's Draft Remand Comments at 5.
[51] *See Jacobi Carbons AB, et al. v. United States*, 619 Fed.Appx. 992, 1001 (Fed. Cir. 2015) (*Jacobi Carbons 2015*) (where the Federal Circuit preferred an import price over a domestic price because the domestic price covered only one region of the Philippines); and *Administrative Review of Certain Frozen Warmwater Shrimp from the People's Republic of China:  Final Results and Partial Rescission of Antidumping Duty Administrative Review*, 75 FR 49460 (August 13, 2010), and accompanying IDM at Comment 7 (where price quotes do not represent actual prices and do not represent a broad market average).

increasing the accuracy of the Brazilian plywood SV.[52]  The Court has upheld Commerce's

approach of eliminating aberrational values from data sets on which it relies.[53]

Pursuant to the Court's order and interested party comments, Commerce reviewed the

various FOPs of both Brazil and Malaysia.  Fiberboard, along with plywood, is also a major

input that is used as a core material in the production of the subject merchandise.[54]  Senmao

reports that it used high density fiberboard (HDF) to produce the subject merchandise.[55]  The

record contains Brazilian HS 4411.92.90:  "Other {Fiberboards} Of Wood,

5Mm<Thickness<9Mm" ("Other {Fiberboards} Of Wood, Not Mechanically Worked D>0") and

Malaysian HS 4411.13.0000:  "Medium Density Fiberboard (Mdf):  Of A Thickness > 5 Mm But

< 9 Mm."[56]  As evident by the HS descriptions, the Malaysian SV for fiberboard is inferior

because it is specific to medium density fiberwood, as opposed to Senmao's HDF inputs,

whereas Brazilian SV data for fiberwood is not limited.  Because the description of the

Malaysian HS for fiberboard is not specific to the input used by Senmao, we find the Brazilian

SV for fiberboard on the record to be the more specific as it would contain HDF inputs and thus

supports Commerce's continued use of Brazil as the primary surrogate country.[57]

---

[52] *See Certain Activated Carbon from the People's Republic of China:  Final Results of Antidumping Duty Administrative Review; 2014-2015*, 81 FR 62000 (September 8, 2016) (*AR8 Activated Carbon*), and accompanying IDM at Comment 5 (where Commerce removed French imports from the Thai import data).

[53] *See*, *e.g.*, *Guangdong Chemicals Imp. & Exp. Corp. v. United States*, 460 F. Supp. 2d 1365, 1370 (CIT 2006) (stating that Commerce's "elimination of aberrational values has been held to be a reasonable means for compensating for flaws in a data set") (*Guangdong Chemical*) (citing *Hebei Metals & Minerals Imp & Exp. Corp. v. United States*, 28 CIT 1 185, 2004 WL 1615597, at *12 (2004)).

[54] *See* Senmao CDQR Response, Section C at 10 and Section D at 5.

[55] *Id.*; *see also* Senmao SV Comments at Exhibit 1.

[56] *See* Senmao SV Comments at Exhibits 1 and 2; and Petitioner SV Comments at Exhibits 1 and 2.

[57] *See Certain Frozen Warmwater Shrimp from the Socialist Republic of Vietnam:  Preliminary Results of Antidumping Duty Administrative Review; 2014-2015*, 81 FR 12702 (March 10, 2016), and accompanying PDM at 25 (where Commerce preferred valuing the input using a basket category from the primary surrogate country), unchanged in *Certain Frozen Warmwater Shrimp from the Socialist Republic of Vietnam:  Final Results of Antidumping Duty Administrative Review; 2014-2015*, 81 FR 62717 (September 12, 2016), and accompanying IDM at Comment 2.

In addition to the lack of a specific fiberboard SV, Malaysia suffers an additional and important deficiency as a potential surrogate country in that, as noted above, it does not have contemporaneous surrogate financial statements from which to derive surrogate financial ratios.[58]  Contemporaneity is a major factor in determining whether a financial statement is adequate for Commerce's analysis.[59]

To support its argument that Commerce is required to value all SVs solely from the primary surrogate country,[60] Senmao cites to *China ChlorIsos Prelim 15-16* and claims that Commerce used Mexico as the primary surrogate country because the SV for chlorine from Romania was aberrational.[61]  While it is true that Commerce declined to use Romania as the primary surrogate country, in part, because the chlorine SV from Romania had an average-unit-value (AUV) several times higher than the chlorine AUV from the other potential surrogate countries in that case,[62] Commerce also declined to use Romania because the Romanian financial statements on the record of that case were not translated, and therefore were unusable to calculate surrogate financial ratios.[63]  Although Malaysian financial statement is translated, it is not contemporaneous.  Accordingly, because Malaysian financial statement is not contemporaneous, while the Brazilian financial statement is contemporaneous, Commerce is continuing to use the Brazilian financial statement to value Senmao's production.

---

[58] *See* Petitioner SV Comments at Exhibit 10B; *see also Preliminary Results* PDM at 17; *Certain Activated Carbon from the People's Republic of China:  Final Results of Antidumping Duty Administrative Review; Final Determination of No Shipments, and Final Rescission of Administrative Review, in Part; 2018-2019,* 87 FR 10539 (February 22, 2021), and accompanying IDM, aff'd in *Carbon Activated Tianjin Co., Ltd. v. United States*, 633 F.Supp.3d 1329 (CIT 2023); and *Seah Steel Vina Corp. v. United States*, 950 F.3d 833, 840-42 (Fed. Cir. 2020) (upholding Commerce's reliance on financial statements that are publicly available and contemporaneous).
[59] *Id.*
[60] *See* Senmao's Draft Remand Comments at 6.
[61] *Id.* at footnote 9.
[62] *See China ChlorIsos Prelim 15-16* PDM at "3. Data Availability."
[63] *Id.*

As Senmao correctly points out, Commerce has a strong preference to use SVs from a single surrogate country.[64]  However, after reconsidering the strengths and weaknesses of Malaysia and Brazil in the above discussion pursuant to the Court's order, Commerce continues to find that Brazil is the appropriate primary surrogate country.  In sum, Brazil remains the appropriate primary surrogate country because it has reliable SVs for all Senmao's inputs, including fiberboard, a major input in Senmao's production, except for the oak log FOPs, as well as a surrogate financial statement that meets Commerce's selection criteria.[65]  As for the Brazilian SV for plywood, even after adjusting for the Spanish import data, as discussed further below, we continue to find the data to be the best available information because it comes from the primary surrogate country and fulfills Commerce's criteria.  In contrast, Malaysian financial statement is less specific to high density fiberboard that Senmao uses and lacks a contemporaneous financial statement.  Therefore, based on the totality of the SV data and the weighing of these factors, we find that the quality of data and financial statements in Brazil favors selecting Brazil over Malaysia as the primary surrogate country.

**Comment 2:  The Use of Malaysian Data to Value Oak Logs**

The following is a verbatim summary of arguments submitted by Senmao.  For further details, *see* Senmao's Remand Comments at 10-12.

- The Court did not reach the issue of whether {Commerce}'s determination to use Malaysia as a secondary surrogate country to value oak log inputs is supported by substantial evidence.  Nevertheless, {Commerce} again repeats its justification for using

---

[64] *See* Senmao's Draft Remand Comments at 8 (citing *Jacobi Carbons AB v United States*, 992 F.Supp.2d 1360, 1376 (CIT 2014), aff'd in *Jacobi Carbons 2015*).
[65] *See Preliminary Results* PDM at 17.

Malaysian data for the valuation of Senmao's oak logs stating that Brazilian oak log data was unavailable.

- As previously argued by Senmao, the lack of oak specific data in Brazil is not a sufficient basis for Commerce to depart from its normal and well-established practice of valuing all factors of production in a single surrogate country. {Commerce}'s decision in the Draft Second Remand Results continues to be based solely on a finding that the Malaysian data was more specific to oak logs, which is not the correct standard. In fact, the Court has previously upheld Commerce's selection of a surrogate value despite the fact that an alternative surrogate value in another country was more specific.[66]

- While {Commerce} claims that data to value oak logs was "unavailable" in Brazil, there was data available in Brazil to value logs. With respect to oak logs, even though there was no data available from Brazil under HS 4403.91, {Commerce} should have valued Senmao's oak logs using the Brazilian data under HS 4403.99. Even if it was less specific, it was still the best information in Brazil to value oak logs.

**Commerce's Position:**

As Senmao acknowledges, the Court did not reach the issue of whether Commerce's determination to use Malaysia as the secondary surrogate country to value the oak log inputs is supported by substantial evidence.[67] Because this issue was not remanded for Commerce's reconsideration, we have made no changes to our prior remand redetermination issued pursuant to *Senmao I.* By incorporating its justification for continuing to rely on the Malaysian SV for

---

[66] *See* Senmao's Remand Comments at 3 (citing *United Steel and Fasteners Inc. v United States*, 469 F.2d 1390, 1402 (CIT 2020)).
[67] *See* Senmao's Remand Comments at 10.

oak logs, Commerce's intent was to ensure continuity in its explanations between  the *Senmao I Final Remand* and here.

Senmao contends that the lack of specific data in Brazil is not a sufficient basis for Commerce to depart from its practice of relying on only one primary surrogate country.  Further, Senmao claims that although Commerce had found in its redetermination that the Brazilian SV data for oak logs was unavailable, there was data in Brazil to value logs.  However, Senmao's argument disregards the Court's ruling in *Senmao I* that Commerce may depart from its primary surrogate country practice when the data between the alternative choices are not "fairly equal"[68] because one is highly questionable, inadequate, or unavailable.  Senmao also ignores our explanation on remand that the Brazilian SV for oak logs was unavailable because no entries were made under that HS subheading during the POR while on the contrary the same subheading had entries in previous years.[69]  While Senmao is correct that Brazil data contains data from another HS category that is not specific to oak logs which Senmao suggested could be used to value oak logs, the record evidence indicates that oak logs were imported to Brazil under a different HS category.  Accordingly, we find the Malaysian SV for oak logs to be more specific and more appropriate for calculating the SV of oak logs.

Lastly, Senmao's arguments concerning potential distortions arising from using the oak-specific Malaysian SV data are misplaced and ring hollow, given that the alternative Senmao advocates is a broader category that is not specific to oak logs, which were previously imported to Brazil under a different HS category.  Accordingly, Commerce finds that that the Brazilian SVs for oak logs are unavailable and, thus, it would be appropriate to use Malaysian oak-specific data to value Senmao's oak logs.  The Court was clear in its decision in *Senmao I* that a

---

[68] *See Calgon Carbon Corp. v. United States*, 145 F. Supp. 3d 1312, 1326-28 (CIT 2016).
[69] *See Senmao I Final Remand* at 13-15.

distortion analysis is unnecessary when the data are unavailable or inadequate, stating that "Commerce may use a second surrogate country if data from the primary surrogate country are unavailable or unreliable."[70]  Accordingly, we made no additional changes for these final results of remand redetermination with respect to the valuation of Senmao's logs.

**Comment 3:  The Adjustment to the Brazilian Plywood Surrogate Value**

The following is a verbatim summary of the arguments submitted by Senmao.  For further details, *see* Senmao's Remand Comments at 2-3.

- {Commerce} also tries to claim that "the flaw in the data is limited to a very small and isolated subset of data and can be easily corrected through a simple adjustment."  This claim is not supported by the record.  As Senmao has explained and as the Court itself noted, the Brazilian plywood surrogate value increased from 1.33 per cubic meter before the adjustment to 7.36 per cubic meter after the adjustment, a 453% increase.  This was not a minor adjustment.

- {Commerce}'s Draft Second Remand Results ignore the Court's order. Instead, {Commerce} merely repeats its prior explanations that Exhibit 9 demonstrates that the Spanish data is erroneous, a fact on which the parties do not disagree.[71]  However, as the Court explained, "the fact that the kg and m3 quantities cannot be the same does not support the automatic conclusion, without any explanation, that removal of erroneous data led to a more accurate dataset."[72]  {Commerce} again fails to provide any such explanation.

---

[70] *See Senmao I* at 8 (citing Policy Bull. No. 04.1).
[71] *See* Draft Results of Remand Redetermination*, Jiangsu Senmao Bamboo and Wood Industry Co., Ltd., et al v. United States,* Court No. 22-190, Slip Op. 24-47, dated April 19, 2024.
[72] *See Remand Order* at 7.

- Moreover, Commerce has cited to no evidence that the aggregate AUV data was in any way distorted or made aberrational by the error and its decision to adjust the data without such a determination is contrary to its practice. Finally, {Commerce} ignores the Court's suggestion to reopen the record and provide the parties with the opportunity to submit corrected information that will lead to a more accurate dumping margin calculation. {Commerce} offers no explanation as to why it is ignoring the Court's suggestion. {Commerce} should either decline to adjust the Brazilian plywood data or reopen the record for the submission of new factual information.

**Commerce's Position:**

We noted in the *Final Results* that the erroneous line item in the Brazilian import data, which reported the same quantity figure for kgs and $m^3$ represented imports from Spain for a single POR month--January 2020.[73] We agree with Senmao that no party has argued that this data is not erroneous,[74] and to comply with the Court's order, we explain above how we reached this conclusion using record evidence. We also recognize that removing the erroneous January 2020 Spanish import data had a large effect on the AUV, as Senmao points out. While this fact does nothing to impugn the remainder of the Brazilian plywood data, it demonstrates that the erroneous line item significantly skewed the AUV. Thus, by removing data that all parties agree are erroneous, we eliminated a known inaccuracy from the SV calculation, resulting in a more accurate SV for plywood. As noted above, Commerce has removed country-specific imports that are not specific to the input in question[75] and this approach has been upheld by this Court in

---

[73] *See Final Results* IDM at 9.
[74] *See* Senmao's Remand Comments at 3 ("… Exhibit 9 demonstrates that the Spanish data is erroneous, a fact on which the parties do not disagree.") (citation omitted).
[75] *See AR8 Activated Carbon* IDM at Comment 5.

another case.[76]  The Federal Circuit has also defined "accuracy" in the context of Commerce's determinations as "correct as a mathematical and factual matter, thus supported by substantial evidence."[77]  In addition, "the statute affords administrative discretion to examine various data sources for determining the best available information."[78]  Because removal of the erroneous plywood line item results in a more accurate dataset, *i.e.*, one that is not improperly skewed by incorrect data, and comes from the primary surrogate country, Commerce finds the plywood data remains the best available information.

With respect to Senmao's comment regarding the Court's suggestion that Commerce reopen the record and provide the parties with the opportunity to submit corrected SV information, it is not Commerce's normal practice to reopen the record on remand.[79]  Moreover, the Brazilian SV data placed on the record by Senmao originated from the GTA, which is an independent source of import data.[80]  Therefore, the parties would not have the ability to correct the erroneous line of data and there is no argument from the parties that the GTA data have been revised to address this error.  Further, the Court did not order Commerce to reopen the record but included it as an option to consider; therefore, Senmao's characterization of Commerce's decision as ignoring the Court's order is inaccurate.[81]

---

[76] *See Guangdong Chemical* at 1370.
[77] *See Nan Ya Plastics Corp. v. United States*, 810 F.3d 1333, 1344 (Fed. Cir. 2016).
[78] *See Heze Huayi Chemical Co. v. United States*, No. 17-00032, Slip Op. 18-57 (CIT 2018), at 4 (citing *National Ford Chem Co. v. United States*, 166 F.3d 1373, 1377 (Fed. Cir. 1999) ("While {773(c)} provides guidelines to assist Commerce in this process, this section also accords Commerce wide discretion in the valuation of factors of production in the application of those guidelines.")).
[79] *See Essar Steel Ltd. v. United States*, 678 F.3d 1268, 1277-78 (Fed. Cir. 2012).
[80] *See Chlorinated Isocyanurates from the People's Republic of China:  Final Results of Antidumping Duty Administrative Reivew; 2017-2018*, 85 FR 10411 (February 24, 2020), and accompanying IDM at Comment 3.
[81] *See Remand Order* at 21.

## IV.    FINAL RESULTS OF REDETERMINATION

In accordance with the Court's *Remand Order*, Commerce has revised the AD rate for

Senmao for the period December 1, 2019, through November 30, 2020, as follows:

| Exporter | Final Results of Redetermination Estimated Weighted-Average Dumping Margin (percent) |
|---|---|
| Jiangsu Senmao Bamboo and Wood Co., Ltd. | 16.17 |

If Commerce's determination is sustained by the Court, Commerce will publish a notice

of amended final results in the *Federal Register* consistent with *Timken*[82] and issue appropriate

customs instructions to U.S. Customs and Border Protection, consistent with the discussion

above.

6/18/2024

X _____

Signed by: RYAN MAJERUS

Ryan Majerus
Deputy Assistant Secretary
  for Policy and Negotiations,
  performing the non-exclusive functions and duties
  of the Assistant Secretary for Enforcement and Compliance

---

[82] *See Timken Co. v. United States*, 893 F.2d 337 (Fed. Cir. 1990) (*Timken*); *see also Diamond Sawblades Manufacturers Coalition v. United States*, 626 F.3d 1374 (Fed. Cir. 2010).