## UNITED STATES COURT OF INTERNATIONAL TRADE

### BEFORE: THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| JIANGSU SENMAO BAMBOO AND WOOD INDUSTRY CO., LTD. | ) ) ) ) |
| Plaintiff, | ) ) |
| and | ) ) |
| LUMBER LIQUIDATORS SERVICES, LLC, | ) ) ) | Consol. Court No. 22-00190
| Plaintiff-Intervenor, | ) ) ) |
| v. | ) ) |
| UNITED STATES, | ) ) |
| Defendant, | ) ) |
| and | ) ) |
| AMERICAN MANUFACTURERS OF MULTILAYERED WOOD FLOORING, | ) ) ) |
| Defendant-Intervenors. | ) ) |

**PLAINTIFF'S COMMENTS IN OPPOSITION TO REMAND REDETERMINATION**

Jeffrey S. Neeley
Stephen W. Brophy
Husch Blackwell, LLP

1801 Pennsylvania Ave., N.W.
Suite 1000
Washington, D.C. 20006
(202) 378-2357
Jeffrey.Neeley@huschblackwell.com

Dated: August 20, 2024

**TABLE OF CONTENTS**

**INTRODUCTION** ........................................................................................................................ 1

**STANDARD OF REVIEW** ....................................................................................................... 2

**BACKGROUND** ........................................................................................................................ 2

**ARGUMENT** .............................................................................................................................. 3

    I.    **The Department's Decision to Select Brazil as the Primary Surrogate Country, while also Rejecting or Adjusting the Brazilian Data for Primary Inputs, Is Not In Accordance with the Court's Remand Order and Is Not Supported by Substantial Evidence or Otherwise in Accordance with Law** ............................................................ 3

    II.   **The Department's Second Remand Results Are Not in Accordance with the Court's Remand Order, Not Supported by Substantial Evidence, and Not in Accordance with Law with Respect to the Surrogate Value for Plywood** .................................................. 7

**CONCLUSION** ......................................................................................................................... 12

## TABLE OF AUTHORITIES

### Cases

*Ausimont USA, Inc. v. United States*, 19 CIT 151, 157, 882 F. Supp. 1087, 1092 (1995) ............. 2

*Canadian Solar Int'l Ltd. v. United States*, 415 F. Supp. 3d 1326, 1332 (Ct. Int'l Trade 2019) ..... 9

*Changzhou Wujin Fine Chem. Factory Co. v. United States*, 701 F.3d 1367, 1374 (Fed. Cir. 2012) ................................................................................................................................................ 2

*Chevron U.S.A. Inc. v. Natural Res. Def. Council*, 467 U.S. 837, 842-43 (1984) .......................... 2

*Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) ................................................................. 2

*FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132 (2000) ....................................... 2

*Jacobi Carbons AB v. United States*, 992 F. Supp. 2d 1360, 1376 (Ct. Int'l Trade 2014), aff'd, 619 F. App'x 992 (Fed. Cir. 2015) ............................................................................... 6

*Jiangsu Senmao Bamboo & Wood Indus. Co. v. United States*, 651 F. Supp. 3d 1348, 1359, 1361 (Ct. Int'l Trade 2023) ................................................................................................................. 3

*Jiangsu Senmao Bamboo & Wood Indus. Co. v. United States*, 698 F. Supp. 3d 1277, 1286 (Ct. Int'l Trade 2024) .......................................................................................................................... 11

*Jiaxing Bro. Fastener Co. v. United States*, 11 F. Supp. 3d 1326, 1333 (Ct. Int'l Trade 2014), aff'd sub nom. Jiaxing Bro. Fastener Co. v. United States, 822 F.3d 1289 (Fed. Cir. 2016) ................................................................................................................................................ 5

*Jiaxing Bro. Fastener Co. v. United States*, 822 F.3d 1289 (Fed. Cir. 2016) ................................ 5

*Nakornthai Mill Public Co. v. United States*, 587 F. Supp. 2d 1303, 1306 (Ct. Int'l Trade 2008)  2

*SKF USA, Inc. v. United States*, 263 F.3d 1369, 1382 (Fed. Cir. 2001) ......................................... 8

*U.S.A. Inc. v. Natural Res. Def. Council*, 467 U.S. 837, 842-43 (1984) ......................................... 2

*Xinjiamei Furniture Zhangzhou) Co. v. United States*, 968 F. Supp. 2d 1255, 1259 (Ct. Int'l Trade 2014) ................................................................................................................................ 2

### Statutes

19 U.S.C. § 1516a(b)(1)(B)(i) .......................................................................................................... 2

## Other Authorities

*Multilayered Wood Flooring from the People's Republic of China: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2019-2020*, 87 Fed. Reg. 39464 (July 1, 2022) ("Final Results") and accompanying Issues and Decision Memorandum at Comment 1 .................................................................................................................. 9

*Multilayered Wood Flooring from the People's Republic of China: Preliminary Results of the Antidumping Duty Administrative Review, Preliminary Determination of No Shipments, and Rescission of Review, in Part; 2019–2020*, 86 Fed. Reg. 73252 (December 27, 2021) ............... 11

*Multilayered Wood Flooring from the People's Republic of China: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2016-2017*, 84 Fed. Reg. 38002 (August 5, 2019) ..................................................................................................... 6

*Multilayered Wood Flooring from the People's Republic of China: Final Results of Antidumping Duty Administrative Review, Final Determination of No Shipments, and Final Partial Rescission of Antidumping Duty Administrative Review; 2014-2015*, 82 Fed. Reg. 25766 (June 5, 2017). 6, 7

*Multilayered Wood Flooring from the People's Republic of China: Final Results of Antidumping Duty Administrative Review, Final Determination of No Shipments, and Partial Rescission; 2015-2016*, 83 Fed. Reg. 35461 (July 26, 2018) ........................................................................ 6

*Multilayered Wood Flooring from the People's Republic of China: Notice of Court Decision Not in Harmony with the Final Results of the Second Antidumping Duty Administrative Review*, 85 Fed. Reg. 83888 (December 23, 2020) ...................................................................................... 7

## INTRODUCTION

On behalf of Plaintiffs Jiangsu Senmao Bamboo and Wood Industry Co., Ltd. ("Senmao"), and pursuant to the Court's Order of April 19, 2024 (ECF No. 65), we hereby submit Plaintiff's comments in opposition to the Final Results of Redetermination Pursuant to Court Remand ("Final Second Remand Results") filed by the U.S. Department of Commerce ("Commerce" or "the Department") on June 18, 2024, ECF No. 66 (2RPR 6).[1] Commerce filed the administrative record for the Final Remand Results on July 3, 2024, ECF No. 67.

As argued below, Commerce's Final Second Remand Results are not in compliance with the Court's remand order, are not supported by substantial evidence, and are otherwise not in accordance with law. With respect to the adjustments made to the plywood surrogate value, we respectfully request that the Court order Commerce not to make this adjustment. The Court has been patient with Commerce and remanded this issue to Commerce twice, and Commerce has now demonstrated that it has no reasonable explanation for its methodology yet sticks to its unsupported position. Under these conditions a direct order to Commerce is appropriate. Commerce has refused to reconsider its Final Second Remand Results consistent with the findings of this Court so, in our view. it is now time for the Court to take more direct action.

---

[1] References to the administrative record for the *Final Second Remand Results* are shown as "2RCR" (second remand confidential record) and "2RPR" (second remand public record). References to the administrative record for the *Final First Remand Results* administrative record submitted to the Court on November 8, 2023, ECF No. 56, are shown as "1RCR" (first remand confidential record) and "1RPR" (first remand public record). References to the initial administrative record submitted to the Court on August 30, 2022, ECF No. 33, are shown as "CR" (confidential record) and "PR" (public record).

1

**STANDARD OF REVIEW**

The Court will hold unlawful agency determinations that are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i); *Ausimont USA, Inc. v. United States*, 19 CIT 151, 157, 882 F. Supp. 1087, 1092 (1995). Substantial evidence means that there is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court also reviews Commerce's remand redeterminations for compliance with the Court's remand order. *Xinjiamei Furniture Zhangzhou) Co. v. United States*, 968 F. Supp. 2d 1255, 1259 (Ct. Int'l Trade 2014) (quoting *Nakornthai Mill Public Co. v. United States*, 587 F. Supp. 2d 1303, 1306 (Ct. Int'l Trade 2008).

In judging the Department's interpretation of a statute, the Court does so under the framework established by *Chevron U.S.A. Inc. v. Natural Res. Def. Council*, 467 U.S. 837, 842-43 (1984). Under Chevron, the Court first asks whether Congress has directly spoken to the precise question at issue. If Congress has done so, the inquiry ends; the Court "must give effect to the unambiguously expressed intent of Congress." *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132 (2000) (*quoting Chevron*, 467 U.S. at 842-43). Commerce must act reasonably and may not be arbitrary and capricious. *See e.g., Changzhou Wujin Fine Chem. Factory Co. v. United States*, 701 F.3d 1367, 1374 (Fed. Cir. 2012) ("Commerce's decision will be set aside if it is arbitrary and capricious.").

**BACKGROUND**

The Court first remanded this case with respect to two decisions by Commerce in the final results of the underlying administrative review: 1) Commerce's decision to select Brazil as the primary surrogate country but rely on Malaysian surrogates to value Senmao's log inputs,

2

and 2) Commerce's decision to adjust the Brazilian surrogate value for plywood to remove Spanish import date for January 2020 from the average unit value because a single line of data was "clearly incorrect". *Jiangsu Senmao Bamboo & Wood Indus. Co. v. United States*, 651 F. Supp. 3d 1348, 1359, 1361 (Ct. Int'l Trade 2023).

Ultimately, the Court concluded that Commerce's First Remand Redetermination still did not adequately explain all of its decisions in this review and remanded the case to Commerce again. *Jiangsu Senmao Bamboo & Wood Indus. Co. v. United States*, 698 F. Supp. 3d 1277 (Ct. Int'l Trade 2024). In its second remand, the Court held that Commerce did not provide an adequate explanation for its decision to the select Brazil as the primary surrogate country, It also again remanded Commerce's decision to adjust the Brazilian plywood surrogate value as Commerce's explanation in its first remand results were inadequate. Commerce filed its Final Second Remand Results on June 18, 2024, ECF No. 66 (2RPR 6). As shown below, Commerce's Final Second Remand Results are still not supported by substantial evidence or otherwise in accordance with law. Commerce still has not offered a rational explanation for its decisions in this review despite two remands.

## ARGUMENT

**I.     The Department's Decision to Select Brazil as the Primary Surrogate Country, while also Rejecting or Adjusting the Brazilian Data for Primary Inputs, Is Not In Accordance with the Court's Remand Order and Is Not Supported by Substantial Evidence or Otherwise in Accordance with Law**

The Court remanded Commerce's selection of Brazil as the primary surrogate country because Commerce did not cite to record evidence in support of its "conclusory statement in the Remand Redetermination that Brazilian and Malaysian surrogate values were publicly available, contemporaneous with the period of review, representative of a broad market average, tax and

3

duty-exclusive, and specific to the inputs being valued", "nor any evidence to support its determination that Brazil was the appropriate primary surrogate country." *Jiangsu Senmao,* 698 F. Supp. 3d at 1284. Commerce still has not provided an adequate explanation.

Commerce's claim that the Brazilian surrogate values were publicly available, contemporaneous with the period of review, representative of a broad market average, tax and duty-exclusive, and specific to the inputs being valued is contradicted by Commerce's decisions in this case. First, the record evidence cannot establish that the Brazilian data for logs was specific to Senmao's inputs because the Department has refused to use Brazilian data to value Senmao's oak logs finding that such data was unavailable in Brazil. Final Second Remand Results at 4. Instead, the Department continues to rely on Malaysian data to value oak logs. Moreover, Commerce the continues to adjust the plywood data to remove import data from Spain, which as discussed below, results in a distorted surrogate value for plywood when using the Brazilian data. As a result, the data used by the Department to value Senmao's plywood represents only a subset of the Brazilian market. Based on the Department's determinations with respect to the Brazilian data, the only country that meets the criteria to value Senmao's inputs is Malaysia. If the Department cannot use the Brazilian plywood data without adjustment and cannot find a Brazilian surrogate to value oak logs, then, under its standard practice, it should have selected Malaysia as the primary surrogate country and relied on Malaysian data for all of the surrogate values.

Regardless of the flaws Commerce finds with the Brazilian data, Commerce maintains that the Brazilian data was superior due to other alleged flaws in the Malaysian data. Commerce now bases its selection of Brazil on the claims that the Malaysian financial statements are not contemporaneous and the new theory that the Malaysian surrogate value for fiberboard is not

4

specific to the high-density fiberboard used by Senmao. Final Second Remand Results at 7 and 14. However, Commerce does not claim that the Malaysian financial statements are unusable and or explain how any flaws in the Malaysian fiberboard data outweigh the flaws with the Brazilian log data. In addition, Commerce has not established that there are any flaws in the Malaysian fiberboard data. Commerce's claim that there was only Malaysian data to value "medium density fiberboard" on the record is simply incorrect. While Petitioner initially provided Malaysian data for "medium density fiberboard" in its first surrogate value submission, Petitioner later placed information on the record to value high density fiberboard under Malaysian HTS code 4411.92. Petitioner's Letter, "Surrogate Value Comments," dated July 29, 2021 (PR 179-182) and Additional Surrogate Value Information, dated November 8, 2021 at page 1 and Exhibit 1 (PR 200).

In fact, Commerce's Final Second Remand Results find that Malaysia is a suitable primary surrogate country because it fulfills the criteria, and the record contains usable data for valuing the vast majority of Senmao's FOPs. Final Second Remand Results at 7. Ultimately, Commerce fails to explain why the alleged flaws in the Malaysia data outweigh the flaws in the Brazilian data. The Court has previously found it reasonable for Commerce to give greater weight to the major inputs as opposed to the financial statements: "Due to the steel input's outsized impact on Plaintiffs' normal value, Commerce reasonably prioritized that input in making its surrogate country selection." *Jiaxing Bro. Fastener Co. v. United States*, 11 F. Supp. 3d 1326, 1333 (Ct. Int'l Trade 2014), *aff'd sub nom. Jiaxing Bro. Fastener Co. v. United States*, 822 F.3d 1289 (Fed. Cir. 2016). "A reasonable mind could likewise conclude that Commerce's regulatory preference to value all inputs from a single surrogate country favors using Thai data to value all of Plaintiffs' inputs despite some apparent relative superiority of the Philippine financial and HC1 data." Id.

5

The decision to mix and match data from multiple surrogate countries should not be taken lightly, as the Department had done here.  While Commerce claims that Senmao has not demonstrated that there were any distortions caused by the mixing of Brazilian and Malaysian data, the existence of such distortions has been addressed by the Court.  The Court has stated that it "…must treat seriously the Department's preference for the use of a single surrogate country" because it using multiple surrogate countries would result in distortions:

> This preference stems from the sensible conclusion that "deriving the surrogate data from one surrogate country limits the amount of distortion introduced into {the Department's} calculations because a domestic producer would be more likely to purchase a product available" domestically. *Clearon,* 37 CIT at ——, Slip Op. 13–22, at 12, 13 ("{T}he use of a 'single surrogate country' is justified when ... all other factors are 'fairly equal' because minimizing distortion supports a finding that Commerce relied upon the best available information on the record."). Moreover, the process of determining normal value by using data from a market economy country to value factors of production used in manufacturing a product in a nonmarket economy country is inexact enough without adding greater ambiguity, such as the inclusion of a third market and yet another currency.

*Jacobi Carbons AB v. United States*, 992 F. Supp. 2d 1360, 1376 (Ct. Int'l Trade 2014), aff'd, 619 F. App'x 992 (Fed. Cir. 2015).  Moreover, the history of this order demonstrates that there were distortions.   As noted in Senmao's previous submissions, this is not the first review in which Senmao was selected as a mandatory respondent.   Senmao was reviewed as a mandatory respondent and received zero, de minimis, or small margins in numerous administrative reviews. *Multilayered Wood Flooring from the People's Republic of China: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2016-2017*, 84 Fed. Reg. 38002 (August 5, 2019) (zero margin); *Multilayered Wood Flooring from the People's Republic of China: Final Results of Antidumping Duty Administrative Review, Final Determination of No Shipments, and Partial Rescission; 2015-2016*, 83 Fed. Reg. 35461 (July 26, 2018) (zero margin); *Multilayered Wood Flooring from the People's Republic of China:*

6

*Final Results of Antidumping Duty Administrative Review, Final Determination of No Shipments, and Final Partial Rescission of Antidumping Duty Administrative Review; 2014-2015*, 82 Fed. Reg. 25766 (June 5, 2017) (de minimis margin).  Even in reviews where Senmao received a margin as a mandatory respondent, the dumping margin was small.  *Multilayered Wood Flooring from the People's Republic of China: Notice of Court Decision Not in Harmony with the Final Results of the Second Antidumping Duty Administrative Review*, 85 Fed. Reg. 83888 (December 23, 2020) (3.92 percent margin for 2012-2013 review).  In all of those reviews Commerce relied on a single surrogate country.   In this case, Commerce created significant dumping margin through its mixing or surrogate countries' data. If Commerce decided that there were significant flaws in the Brazilian data, it should have simply switched to using Malaysia as the surrogate country in order to avoid such distortions.  Commerce has made no such attempt.

Commerce's admission that it needed to manipulate Brazilian data undermines its choice of Brazil as the surrogate country for this review.  The Commerce selection of Brazil as the primary surrogate country because it supposedly provided the best information available for valuing Senmao's factors of production is inconsistent with the Department's finding that there are significant flaws in the Brazilian data, including with respect to the major inputs.

II.     **The Department's Second Remand Results Are Not in Accordance with the Court's Remand Order, Not Supported by Substantial Evidence, and Not in Accordance with Law with Respect to the Surrogate Value for Plywood**

The Court again remanded the Commerce's decision to adjust the Brazilian plywood surrogate value because Commerce only made "a conclusory statement that removing the Spanish import data would enable Commerce to calculate the dumping margins as accurately as possible" and has "failed to explain… how the removal of the Spanish import data would be

7

more accurate, or how such removal made the rest of the dataset the "best available information" pursuant to 19 U.S.C. § 1677b(c)(1). *Jiangsu Senmao,* 698 F. Supp. 3d at 1286. In its remand, Commerce does not provide any reasonable explanation as to how the removal of the Spanish data made the data more accurate. Rather, it simply makes another conclusory statement that that "removing this erroneous value, which is limited to a single line for a single month and does not affect data from any country except Spain, results in a more reliable and accurate dataset." Final Second Remand Results at 9.

Commerce ignores the Court's finding "that Commerce has a standard practice of considering whether the average unit value ("AUV") is aberrational in the aggregate for the economically comparable surrogate countries or as compared to historical AUVs of the surrogate country at issue." *Jiangsu Senmao*, 651 F. Supp. 3d at 1360. If Commerce has a routine practice for addressing similar situations, it must either apply that practice or provide a reasonable explanation regarding why Commerce has deviated from that practice." *SKF USA, Inc. v. United States*, 263 F.3d 1369, 1382 (Fed. Cir. 2001) ("An agency action is arbitrary when the agency offers insufficient reasons for treating similar situations differently." (internal citation omitted)). Under its practice, the Department does not compare individual values of imports in the selected surrogate country entered under the HTS category and evaluate and remove specific line items.

In this case, Commerce's only explanation from deviating from its standard practice is that the removed data is "limited to Spanish data pertaining to a single month and does not affect the remainder of the dataset, which includes data from multiple countries." Final Second Remand Results at 10. In other words, it claims that it was a small adjustment, regardless of the fact that the data was not aberrational in the aggregate. That is not Commerce's standard practice, however, and allowing Commerce to make even "small" adjustments undermines the

8

entire point of Commerce's long-standing practice.  As the Department has explained: "[o]therwise, parties would advocate the manipulation of data by removing one or more line items they find objectionable, with the result that we would not be using the average prices for that category, but some subset thereof", which is exactly what happened in this case. *Crystalline Silicon Photovoltaic Cells from China*, 82 Fed. Reg. 29033 (June 27, 2017) and accompanying Issues and Decision Memorandum at Comment 12; *Certain Uncoated Paper from China*, 81 Fed. Reg. 3112 (Jan. 20,2016) and accompanying Issues and Decision Memorandum at Comment 2; *Multilayered Wood Flooring from China,* 80 Fed. Reg. 41476 (July 15, 2015) and accompanying Issues and Decision Memorandum at Comment 11.D.  The Court has also held that Commerce's policy of not disaggregating data in order to preserve representativeness is reasonable.  *Canadian Solar Int'l Ltd. v. United States*, 415 F. Supp. 3d 1326, 1332 (Ct. Int'l Trade 2019).

    Commerce has cited to no evidence that the aggregate AUV data was in any way distorted or made aberrational by the error in the Spanish data, and its decision to adjust the data without such a determination is contrary to its practice.  In fact, the Department has previously concluded that the aggregate data is not aberrational even if the Spanish data is not removed stating that "[w]ith respect to the petitioner's conclusion that historical and POR evidence demonstrates that the Spanish import data are also aberrational, we disagree" and "[w] therefore cannot conclude that the overall AUV for Brazil is aberrational." *Multilayered Wood Flooring from the People's Republic of China: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2019-2020*, 87 Fed. Reg. 39464 (July 1, 2022) ("Final Results") and accompanying Issues and Decision Memorandum at Comment 1.  Given that fact,

9

there is no reason to adjust the plywood surrogate value by removing any line items nor does it make the plywood surrogate value more accurate or the best information available.

Nor does Commerce establish that the adjusted data is more accurate. It merely makes the same conclusory statements as it did in the last remand redetermination. In fact, removing the Spanish line items simply distorted the Brazilian data in a way grossly adverse to Senmao. The adjustment did not result in Commerce using an accurate surrogate value for plywood, let alone the best information available. In its remand order, this Court stated that it "agrees with Senmao that Commerce did not provide a reasonable explanation for how its removal of the Spanish import data led to a more accurate dataset, and Commerce did not establish how removing the Spanish import data would result in the best available information for calculating Senmao's dumping margin rate." *Jiangsu Senmao,* 698 F. Supp. 3d at 1286. The Court suggested that "Commerce should consider providing the parties with the opportunity to submit corrected information that will lead to a more accurate dumping margin calculation, rather than simply removing data from a larger dataset without explaining how removal is more accurate than allowing for the submission of corrected information." *Id.* at 1287.

The Department's Final Second Remand Results ignores the Court's order. Instead, the Department repeats its prior explanations that Exhibit 9B demonstrates that the Spanish data is erroneous. Final Second Remand Results at 9. However, as the Court explained, "the fact that the kg and m$^3$ quantities cannot be the same does not support the automatic conclusion, without any explanation, that removal of erroneous data led to a more accurate dataset." *Jiangsu Senmao,* 698 F. Supp. 3d at 1286. The Department again fails to provide any such explanation. In fact, by adjusting the data, the Department has just distorted the data again, just in a new

10

manner, as discussed further below . Cases such as this one are exactly why the Department has a policy against adjusting the import data by removing certain line items.

The Department next tries to claim that "the flaw in the data is limited to a very small and isolated subset of data and can be easily corrected through a simple adjustment." Final Second Remand Results at 10. This claim is not supported by the record. As Senmao has explained and as the Court itself noted, the Brazilian plywood surrogate value increased by a 453 percent after the adjustment. *Jiangsu Senmao,* 698 F. Supp. 3d at 1286. Moreover, Senmao's margin was still zero after the preliminary determination, even with Commerce's use of the Malaysian data to value log inputs. *Multilayered Wood Flooring from the People's Republic of China: Preliminary Results of the Antidumping Duty Administrative Review, Preliminary Determination of No Shipments, and Rescission of Review, in Part; 2019–2020*, 86 Fed. Reg. 73252 (December 27, 2021) ("Preliminary Results") (P.R. 219) and Decision Memorandum for the Preliminary Results of Antidumping Duty Administrative Review: Multilayered Wood Flooring from the People's Republic of China; 2019-2020, dated December 17, 2022 ("Preliminary Decision Memorandum") at 17 (P.R. 213). It was only after the Final Determination, where Commerce adjusted the plywood surrogate value as argued by Petitioner that Senmao ended up with a margin of 39.27 percent. *Multilayered Wood Flooring from the People's Republic of China: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2019-2020*, 87 Fed. Reg. 39464 (July 1, 2022) ("Final Results") (P.R. 252) and accompanying Issues and Decision Memorandum for the Final Results of Antidumping Duty Administrative Review: Multilayered Wood Flooring from the People's Republic of China; 2019-2020, dated June 24, 2022 ("IDM") (P.R. 245)

In summary, this was not a minor adjustment and Commerce made this change without any record evidence that the adjusted surrogate value was more accurate or more consistent with any record data than the unadjusted per cubic meter surrogate value. In this case, by removing the line item, without any finding that the aggregate AUV data was aberrational, Commerce has created an aggregate AUV that is itself distorted.  Commerce's Final Second Remand Results simply ignores these issues and the Court's instructions.  Commerce also ignores the Court's suggestion to reopen the record and provide the parties with the opportunity to submit corrected information that will lead to a more accurate dumping margin calculation.  Overall, Commerce seems to be intent on ignoring all of the issues with its chosen methodology.

## CONCLUSION

For these reasons, we respectfully request that the Court remand the case to Commerce a third time for correction. With respect to the adjustments made to the plywood surrogate value, we respectfully request that the Court order Commerce not to make this adjustment.  The Court has already remanded this issue to Commerce twice and Commerce has now demonstrated that it has no reasonable explanation for its methodology.

Respectfully submitted,

/s/Jeffrey S. Neeley
Jeffrey S. Neeley
Stephen W. Brophy
**Husch Blackwell LLP**
1801 Pennsylvania Ave. N.W., Suite 1000
Washington, DC 20006
(202) 378-2409
Jeffrey.Neeley@huschblackwell.com
*Counsel for Plaintiff Jiangsu Senmao Bamboo and Wood Industry Co., Ltd.*

Dated:  August 20, 2024

## CERTIFICATE OF COMPLIANCE

Pursuant to Chamber Procedure 2(B)(2), the undersigned certifies that this brief complies with the word limitation requirement. The word count for this submission as computed by Husch Blackwell's word processing system, Microsoft Word, is 3,692 words.

<u>/s/Jeffrey S. Neeley</u>
Jeffrey S. Neeley
**Husch Blackwell LLP**